IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANI M. SHAFFER, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No: 19-1481 |
| | ) | |
| v. | ) | District Judge Christy Criswell Wiegand |
| | ) | |
| CRANBERRY TOWNSHIP, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS**

AND NOW, comes Defendant, CRANBERRY TOWNSHIP, by and through its attorneys, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, TERESA O. SIRIANNI, ESQUIRE and MORGAN M. J. RANDLE, ESQUIRE and files the within Concise Statement of Material Facts, as follows:

1. Ms. Shaffer began her employment with the Township as a full-time police officer on January 9, 2017. ECF 1 at ¶6.

2. Ms. Shaffer told the Township's Human Resources Manager Stacy Goettler that she may be pregnant on April 11, 2018 and told the Chief of Police, Kevin Meyer, that she was pregnant on May 14, 2018. Ex. L, Ms. Shaffer's Deposition; 11:18-12:3; Ex. M, C. Mascellino's Deposition, 18:3-18.

3. The Chief was congratulatory towards Ms. Shaffer. Ex. M, C. Mascellino's Deposition, 18:3-18.

4. Neither the Cranberry Township Police Department nor the Department's Collective Bargaining Agreement have a written policy for light or modified duty. Ex. N, S.

Goettler's Deposition, 11:23-12:20; Ex. L, Ms. Shaffer's Deposition, 12:4-18; 17:17-18; Ex. O, K. Meyer's Deposition, 18:8-23:7.

5. The Department handles all light and modified duty requests the same based upon the Chief's discretion and doctor's recommendations. Ex. N, S. Goettler's Deposition, 11:23-12:20; Ex. L, Ms. Shaffer's Deposition, 12:4-18; 17:17-18; Ex. O, K. Meyer's Deposition, 18:8-23:7.

6. If an employee requests light or modified duty, Ms. Goettler gives the employee a job description. The employee has their their medical provider provide restrictions to the job description and returned the form to Human Resources for review. Ex. N, S. Goettler's Deposition, 11:23-12:20.

7. Within the Department, Chief Meyer then evaluates the request to determine what available work there is to meet the restrictions. Ex. O, K. Meyer's Deposition, 18:8-23:7.

8. Employees who are injured on the job have their restrictions handled through the Township's workers' compensation provider, who then give the Township instructions on handling. Ex. O, K. Meyer's Deposition, 30:21- 31:8; 193:6-194:11

9. When Ms. Shaffer asked about light-duty based on her pregnancy the Chief told her they would "keep a line of communication open" and he would base it off her doctor's recommendations and/or restrictions. Ex. L, Ms. Shaffer's Deposition, 15:8-17; Ex. O, K. Meyer's Deposition, 96:6-14. Ms. Shaffer even expressed thankfulness for Chief's efforts to find her work. Ex. O, K. Meyer's Deposition, 129:16-24.

10. On June 11, 2018 Ms. Shaffer presented Ms. Goettler with a doctor's note recommending that Ms. Shaffer be placed on light duty. ECF 1 at ¶¶10-11; Exhibit "A" June 8, 2018 Letter.

11. The note recommends that Ms. Shaffer start office duty on June 11, 2018. Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; Exhibit "A" June 8, 2018 Letter.

12. On the same date, Ms. Goettler requested more clarification as to what Ms. Shaffer could and couldn't do. Ex. B Essential Duties List; Ex. L, Ms. Shaffer's Deposition, 25:23-26:8.

13. On June 14, 2018 Ms. Shaffer's doctor faxed the Township an essential job duty form with approved job duties for Ms. Shaffer. ECF 1 at ¶15; Ex. N, S. Goettler's Deposition, 20:12-23:8; Exhibit "B" Essential Duties List.

14. Once the Township received the list of restrictions, the Chief reviewed the restrictions and determined what work was available within Ms. Shaffer's limitations. Ex. N, S. Goettler's Deposition, 23:3-8; Ex. R, Typed Notes.

15. Ms. Shaffer volunteered that she is not sick and both she and her doctor were concerned with the high-risk situations that a patrol officer is sometimes subjected, as well as her limited amount of vacation and personal compensation time based on her minimal time on the job. Ex. R, Typed Notes.

16. When on light-duty Ms. Shaffer was not allowed to be in uniform, could not carry weapons, and could not operate a patrol car, the same as other light duty officers. Ex. L, Ms. Shaffer's Deposition, 48:22-49:15.

17. The work available at this time included in part, phone call requests, walk-in complaints, fingerprints, follow-ups via phone call, warrants, affidavits, Pennsylvania Instant Check System ("PICS") firearms violations, fingerprints and community policing events as allowed by her doctor's recommendations. Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; 45:15-46:3; 62:9-63:17; Exhibit "C" June 22, 2018 Letter.

18. Ms. Shaffer was assigned these tasks. Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; 45:15-46:3; 62:9-63:17; Exhibit "C" June 22, 2018 Letter.

19. Ms. Shaffer began light duty in June 2018 and was also placed on a steady eight hours per day, Monday through Friday schedule. Exhibit "H" Emails, p. 1.

20. Ms. Shaffer was given a set schedule when reception staff was off between June and September. Exhibit "B"; Ex. L, Ms. Shaffer's Deposition, 152:8-153:13; Exhibit "H" Emails, p. 1.

21. On light duty the shifts are 8 hours rather than 12 hours as they are for patrol shifts. Ex. L, Ms. Shaffer's Deposition, 75:5-9.

22. At times Ms. Shaffer was provided 40 hours of light duty work per week. Ex. L, Ms. Shaffer's Deposition, 106:10-12; Exhibit "D" 2018 Paysheets.

23. At other times, this work did not provide 40 hours of light duty per week. Exhibit "D" 2018 Paysheets.

24. During the times in which the tasks did not provide forty hours a week, the Chief told Ms. Shaffer that she could not sit in the office waiting for phone calls and walk-ins to come in because they were infrequent. Ex. L, Ms. Shaffer's Deposition, 29:23-30:7; 63:22-65:1; 67:3-14, 72:14-22; ECF 1 at ¶¶12, 20; Ex. O, K. Meyer's Deposition, 111:12-25; Ex. L, Ms. Shaffer's Deposition, 45:2-11.

25. The Chief could not allow Ms. Shaffer to simply wait in the office for work because there were two additional secretaries who handled phone calls and clerical work. Ex. O, K. Meyer's Deposition, 142:3-143:1.

26. The Chief told Ms. Shaffer that he would provide her with additional opportunities for work. Ex. O, K. Meyer's Deposition, 105:5-23.

27. The Chief spoke with Sergeant Irvin about Ms. Shaffer helping in the Detective's office but Irvin advised that work wasn't available at the time. Ex. O, K. Meyer's Deposition, 145:7-19. The Chief requested that Irvin let him know if any work became available for Ms. Shaffer. Ex. O, K. Meyer's Deposition, 145:7-19; 147:13-148:8.

28. The Chief gave Ms. Shaffer as much time as was available that met her restrictions. Ex. O, K. Meyer's Deposition, 182:12-21.

**Alleged Comparators:**

29. Ms. Shaffer claims that other officers were provided 40 hours a week on a set schedule. She relies on two memoranda about light duty employees, speaking to officers including Shields, Weleski and Evanson, and consulting schedules. Ex. L, Ms. Shaffer's Deposition, 61:12-62:1; Exhibit "E" Memoranda.

30. Employees with work-related injuries requiring light-duty over the past ten years are Officers Mark Shields, Rhonda Evanson, Jeffrey Kobistek, Weleski, William Roberts and Sergeant William Ahlgren. Ex. M, C. Mascellino's Deposition, 9:15-10:25; *See also*, Exhibit "F", Ms. Shaffer's Answers to Defendant's First Set of Interrogatories.

31. Employees who have received light duty from a non-work-related injury have been limited to Ms. Shaffer and Sergeant Irvin, though he did not actually work light duty. Ex. M, C. Mascellino's Deposition, 9:15-10:25; *See* Exhibit "G" (CT_1203-4).

32. Officer Mark Shields is a patrol officer with Cranberry Township who was on light duty following a work related injury requiring rotator cuff surgery in late 2015. Ex. P, M. Shields' Deposition, 5:17-7:19; 34:2-10.

33. Ms. Shaffer spoke with Mark Shields on unidentified number of times on unidentified dates, regarding light duty. Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

34. Shields had a lifting restriction limited to 2, 5 and 10 pounds progressively, and a no climbing provision.  Ex. O, K. Meyer's Deposition, 34:1-9.

35. When Officer Shields was first placed on light-duty on September 29, 2015, there was no work available for him to complete within his restrictions until October 22, 2015. Ex. X, Defendant's Answers to First Set of Interrogatories, p. 3.

36. To find light-duty work for Shields, Chief Meyer consulted with Sergeant Irvin, of the Detective's Office, about what tasks could keep Shields occupied around the station.  Ex. O, K. Meyer's Deposition, 40:12-41:5.

37. During his light duty, Shields assisted in the Detective's office, handled phone calls, walk-ins, assisted investigators and occasionally had court appearances.  Ex. O, K. Meyer's Deposition, 34:17-37:15.

38. When an officer goes to court a situation could arise that would put an officer in harm's way, such that light-duty officers need to be accompanied by a full-duty officer.  Ex. L, Ms. Shaffer's Deposition, 52:24-53:3.

39. During his light duty Shields was not able to perform arrests, pursue fleeing suspects, transport prisoners or fire weapons, though he was able to drive a law enforcement vehicle, monitor the radio, take phone call requests, PICS investigations, handle walk-ins, and help other officers on reports   Ex. P, M. Shields' Deposition, 7:20-21:4; Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

40. Shields' primary focus was on investigations and helping the Detective's office, completing MPOETC training and assisting in records management system merging.  Ex. O, K. Meyer's Deposition, 111:12-113:1.

41.     Officer Shields "probably" did civil fingerprinting, but not criminal prints as it was unwise for someone on light duty to do so.  Ex. P, M. Shields' Deposition, 39:20-43:4.

42.     During his light duty, Officer Shields did not not always work 40 hours a week. Ex. P, M. Shields' Deposition, 24:5-25:25.

43.     Shields was able to get light duty work because he was working in the Detectives' office.  Ex. L, Ms. Shaffer's Deposition, 37:5-9; Ex. O, K. Meyer's Deposition, 34:17-37:15.

44.     A minimum of five years with the Township is required to work in the Detective's Office.  Ex. M, C. Mascellino Deposition, 49:17-50:25; Ex. O, K. Meyer's Deposition, 143:2-144:24.

45.     Ms. Shaffer did not qualify for Detective's Office work.  Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

46.     Officer Roberts worked intermittent modified duty in 2013 and 2015 in relation to work related injuries. Ex. O, K. Meyer's Deposition, 41:6-45:9.

47.     In 2013, Officer Roberts' light duty focus was office duties, making PDF documents, attaching information for the records management system, and assisting the fire company with their alarm billing. Ex. O, K. Meyer's Deposition, 45:18-47:8.

48.     In 2015 Officer Roberts' light duty work was similar, including answering phone calls, handling walk-in complaints, and providing general assistance.  Ex. O, K. Meyer's Deposition, 47:9-48:9.

49.     Roberts did not have a set schedule and was told that the time could change depending on work availability.  Ex. O, K. Meyer's Deposition, 51:7-17.

50. Ms. Shaffer does not know whether Shields and Roberts had enough light duty work to keep them busy during scheduled shifts. Ex. L, Ms. Shaffer's Deposition, 67:17-68:11; 71:14-19.

51. In looking at the schedules, Ms. Shaffer does not know whether people left early or used paid time off because there was no work to do. Ex. L, Ms. Shaffer's Deposition, 72:5-8.

52. The Chief circulated two memoranda regarding employees Kobistek and Evanson on their light duty abilities. Ex. O, K. Meyer's Deposition, 54:4-56:15; Exhibit "E" Memoranda.

53. Ms. Shaffer contends that these individuals were given a set schedule to sit in the office and wait for phone calls and walk-ins and worked more hours than she received, where she did not receive a set schedule other than at the beginning of her light duty. Ex. L, Ms. Shaffer's Deposition, 38:12-39:11.

54. The Chief would give her a schedule a week in advance with varied hours. Ex. L, Ms. Shaffer's Deposition, 38:12-39:11.

55. Ms. Shaffer agrees that based on the memoranda, Officer Evanson was not scheduled for 40 hours of light duty work a week. Ex. L, Ms. Shaffer's Deposition, 80:18-81:22.

56. During her light duty, Evanson focused on correctly merging addresses in the Records Management System, handling phone calls, and walk-ins. Ex. O, K. Meyer's Deposition, 79:23-81:11.

57. Ms. Shaffer agrees that based on the memoranda, Officer Kobistek was not scheduled to work eight hour shifts of light duty. Ex. L, Ms. Shaffer's Deposition, 90:21-91:15.

58. Kobistek was not provided a set schedule and it was determined on a weekly basis. Ex. O, K. Meyer's Deposition, 60:18-25.

59. During his light duty, Kobistek's primary focus was correcting and merging addresses in the Records Management System when the Department made a transition between software. Ex. O, K. Meyer's Deposition, 65:15-66:19.

60. Kobistek did not perform fingerprinting services during his light duty. Ex. O, K. Meyer's Deposition, 67:11-68:1.

61. Ms. Shaffer does not know whether Shields or Kobistek went to court when they were on light duty. Ex. L, Ms. Shaffer's Deposition, 110:2-23.

62. Officer Weleski was on light-duty for a work related incident though Ms. Shaffer did not know what his medical or work restrictions were. Ex. L, Ms. Shaffer's Deposition, 54:3-56:8.

63. Officer Weleski had a substantial caseload, including working on the Records Management System, and he worked 40 hours, full-time on a normal schedule. Ex. L, Ms. Shaffer's Deposition, 54:3-56:8; K. Meyer Deposition, 82:15-83:13. Officer Weleski returned to work without restrictions within two weeks of his injury in May 2017. Ex. Q, CT_1317.

64. Sergeant Ahlgren took light duty when he was a Patrol Sergeant, a supervisory position over the patrol officers. Ex. O, K. Meyer's Deposition, 88:10-93:9.

65. The Patrol Sergeant position was document intensive and required Ahlgren to handle many duties that required experience, extensive training and time on the job that Ms. Shaffer did not have. Ex. O, K. Meyer's Deposition, 88:10-93:9.

66. A Sergeant has more paperwork to do than a patrol officer. Ex. L, Ms. Shaffer's Deposition, 131:8-10.

67. There was no records management system merging needed during Ms. Shaffer's light duty. Ex. O, K. Meyer's Deposition, 112:21-113:1.

68. Had such work been available, Chief would have assigned it to Ms. Shaffer. Ex. O, K. Meyer's Deposition, 142:3-143:1.

69. Employees fill out a time sheet every two weeks to reflect the hours they have actually worked each day. Ex. O, K. Meyer's Deposition, 38:4-39:5.

70. During Kobistek's light-duty period between February 2015 and April 2016, he worked approximately 400 hours. Ex. O, K. Meyer's Deposition, 182:1-183:19; Ex. U, Kobistek's Timesheets.

71. During Shields' light duty between October 2015 and the end of 2015, he worked approximately 200 hours. Ex. O, K. Meyer's Deposition, 184:2-185:6; Ex. S, Shields' Timesheets.

72. During Roberts' light duty between May 2015 and September 2016, he worked approximately 500 hours. Ex. O, K. Meyer's Deposition, 184:2-185:6; Ex. T, Roberts' Timesheets.

73. During Ms. Evanson's light duty she worked approximately 980 hours between June 2013 and November 2014; Ex. V, Evanson's Timesheets.

74. During Ms. Shaffer's approximately six month light-duty period, she worked over 400 hours. Ex. O, K. Meyer's Deposition, 182:1-183:19; Ex. W, Ms. Shaffer's Timesheets.

75. The Chief looked for every opportunity to provide Ms. Shaffer with work. Ex. O, K. Meyer's Deposition, 182:1-183:19; *See entirety*, Ex. H, Emails.

**Retaliation Based Facts:**

76. On or about July 11, 2018 Ms. Shaffer filed a Notice Charge of Discrimination with the Equal Employment Opportunity Commission which the Township received on July 13, 2018. *See* Exhibit "I" Notice of Charge.

77. Ms. Shaffer filed a Charge on November 7, 2018 alleging that the Department and the Chief refused to schedule her for a regular 40 hours week of light duty, though they had previously accommodated light duty requests of male officers. Exhibit "J" Charge.

78. On July 26, 2018 Ms. Shaffer met with the Chief and Ms. Goettler regarding her schedule and work availability.  Ex. "R" Typed Notes.

79. During the meeting they talked about Ms. Shaffer's schedule, upcoming opportunities for work, fingerprinting and the Notice of Charge.  Ex. "R" Typed Notes.

80. During the meeting Ms. Shaffer broached handling burning DVDs for DUI cases, though the same requires special permissions that Ms. Shaffer did not have and that the Chief was not comfortable providing her based on her limited amount of time on the job.  Ex. O, K. Meyer's Deposition, 139:12-140:22.

81. Patrol officers are not given the task of burning DVDs and instead this is handled by Sergeant Ahlgren and Corporal Och.  Ex. O, K. Meyer's Deposition, 139:6-141:7.

82. Ms. Shaffer wanted 40 hours of consistent work claiming that Officer Shields, Kobistek and another officer had consistent desk duty work.  Ex. N, S. Goettler's Deposition, 29:23-30:13.

83. The Chief said that he was trying to provide Ms. Shaffer with a schedule a week in advance with meaningful police work.  Ex. L, Ms. Shaffer's Deposition, 94:5-7.

84. The Chief was providing the work available at that time that met her restrictions.  Ex. O, K. Meyer's Deposition, 138:13-21.

85. At the time of the meeting, the Township was only in receipt of the Notice of Charge from Ms. Shaffer, without any specific allegations contained therein.  *See* Exhibit "I" Notice of Charge; Exhibit "J" Charge.

86. During the meeting the Chief and Goettler asked what they could do to remedy the situation, and indicated that the Chief wanted to maintain open communication with Ms. Shaffer regarding what she felt she could and couldn't do. Ex. L, Ms. Shaffer's Deposition, 93:6-20; Ex. N, S. Goettler's Deposition, 29:23-30:13.

87. Ms. Shaffer alleges retaliation based upon the reduction of hours and duties that she was previously authorized to perform following the meeting. Ex. L, Ms. Shaffer's Deposition, 139:16-140:1.

88. Ms. Shaffer claims the Chief began cutting her duties and no longer allowed her to process Pennsylvania Instant Check System ("PICS") firearm application violations cases or to handle fingerprints following the meeting. ECF 1 at ¶18.

89. The reason the Chief took PICS away from Ms. Shaffer was because he was uncomfortable with Ms. Shaffer being in court or in the field as she could not effectuate an arrest, thought that it was not in her best interest, and was contradictory to her doctor's recommendations. Ex. O, K. Meyer's Deposition, 148:9-153:19; Ex. L, Ms. Shaffer's Deposition, 118:1-10.

90. Ms. Shaffer was allowed to do civil and criminal fingerprinting until July 26th when the criminal fingerprinting task was removed because there was a likelihood that she would have to take individuals into custody, and based upon her doctor's list of appropriate duties and Ms. Shaffer's own comfort level, should not occur. Ex. L, Ms. Shaffer's Deposition, 84:2-90:9; Ex. N, S. Goettler's Deposition, 29:23-30:23; Ex. P, M. Shields' Deposition, 41:15-42:18; Ex. M, C. Mascellino's Deposition, 22:20-23:20.

91. Ms. Shaffer claims that the Chief previously gave her a schedule a week in advance but that stopped after she filed the Charge. Ex. L, Ms. Shaffer's Deposition, 100:6-12.

92. In early September 2018 the Township granted a request by Ms. Shaffer to invoke a two week notice for schedule changes as provided by the Department's Collective Bargaining Agreement. *See* Exhibit "K" September 6, 2018 Letter.

93. Invoking the two week notice period forced the Chief to restrict her duties further than her doctor's recommendations because he could only schedule her for work he was aware of two weeks in advance. Ex. O, K. Meyer's Deposition, 182:12-21.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY:   *s/ Teresa O. Sirianni*
TERESA O. SIRIANNI, ESQUIRE
PA ID # 90472
MORGAN M. J. RANDLE, ESQUIRE
PA ID #324470
**Counsel for Defendant, Cranberry Township**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
(412) 803-1174
(412) 803-1188/fax
tosirianni@mdwcg.com
mmrandle@mdwcg.com

LEGAL/135415648.v1