### IN THE UNITED STATES DISTRICT COURT FOR
### THE WESTERN DISTRICT OF PENNSYLVANIA

TIFFANI M. SHAFFER,                          Civil Action

                    Plaintiff,              No.   19-1481

        v.

CRANBERRY TOWNSHIP,                          Judge Wiegand

                    Defendant.              JURY TRIAL DEMANDED

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### CONCISE STATEMENT OF MATERIAL FACTS

Plaintiff, Tiffani M. Shaffer, by undersigned counsel and pursuant to LCvR 56(C)(1)(c), files this Response to Defendant's Concise Statement of Material Facts [Doc. 39] as follows:

1.      Ms. Shaffer began her employment with the Township as a full-time police officer on January 9, 2017. ECF 1 at ¶6.

**Response:      Undisputed.**

2.      Ms. Shaffer told the Township's Human Resources Manager, Stacy Goettler, that she may be pregnant on April 11, 2018 and told the Chief of Police, Kevin Meyer, that she was pregnant on May 14, 2018. Ex. L, Ms. Shaffer's Deposition; 11:18-12:3; Ex. M, C. Mascellino's Deposition, 18:3-18.

**Response:      Undisputed.**

3.      The Chief was congratulatory towards Ms. Shaffer. Ex. M, C. Mascellino's Deposition, 18:3-18.

**Response:      Undisputed.**

4.      Neither the Cranberry Township Police Department nor the Department's Collective Bargaining Agreement have a written policy for light or modified duty. Ex. N, S.

1

Goettler's Deposition, 11:23-12:20; Ex. L, Ms. Shaffer's Deposition, 12:4-18; 17:17-18; Ex. O, K. Meyer's Deposition, 18:8-23:7.

**Response:** **Undisputed.**

5.      The Department handles all light and modified duty requests the same based upon the Chief's discretion and doctor's recommendations. Ex. N, S. Goettler's Deposition, 11:23-12:20; Ex. L, Ms. Shaffer's Deposition, 12:4-18; 17:17-18; Ex. O, K. Meyer's Deposition, 18:8-23:7.

**Response:** **Undisputed.**

6.      If an employee requests light or modified duty, Ms. Goettler gives the employee a job description. The employee has their their [sic] medical provider provide restrictions to the job description and returned the form to Human Resources for review.  Ex. N, S. Goettler's Deposition, 11:23-12:20.

**Response:** **It is undisputed that someone else in Human Resources would undergo the above steps, though Ms. Goettler herself never dealt with a light duty request for a police employee prior to Ms. Shaffer's request (Goettler 12:21-14:13 [Def. Ex. N, Doc. 40-14]).**

7.      Within the Department, Chief Meyer then evaluates the request to determine what available work there is to meet the restrictions. Ex. O, K. Meyer's Deposition, 18:8-23:7.

**Response:** **Undisputed.**

8.      Employees who are injured on the job have their restrictions handled through the Township's workers' compensation provider, who then give [sic] the Township instructions on handling. Ex. O, K. Meyer's Deposition, 30:21- 31:8; 193:6-194:11

**Response:** **Disputed in part; undisputed in part. Chief Meyer's testimony cited by Defendant indicates that officers receiving heart and lung or workers' compensation benefits had requests for light duty made by their physicians. However, he did not testify**

**that workers' compensation providers gave "instructions" on how to handle light duty. *See* Def. Ex. O, Doc. 40-15. Moreover, Defendant has not produced any such "instructions," despite them being responsive to Plaintiff's Second Request for Production No. 8 (Plt. Ex. 4).**

9.      When Ms. Shaffer asked about light-duty based on her pregnancy the Chief told her they would "keep a line of communication open" and he would base it off her doctor's recommendations and/or restrictions.  Ex. L, Ms. Shaffer's Deposition, 15:8-17; Ex. O, K. Meyer's Deposition, 96:6-14.  Ms. Shaffer even expressed thankfulness for Chief's efforts to find her work. Ex. O, K. Meyer's Deposition, 129:16-24.

**Response:      Undisputed. By way of clarification, the foregoing occurred on June 21, 2018 (Meyer 129:1-24 [Def. Ex. O, Doc. 40-15]). The record does not support that Ms. Shaffer was "thankful" at any other time.**

10.      On June 11, 2018 Ms. Shaffer presented Ms. Goettler with a doctor's note recommending that Ms. Shaffer be placed on light duty. ECF 1 at ¶¶10-11; Exhibit "A" June 8, 2018 Letter.

**Response:      Undisputed.**

11.      The note recommends that Ms. Shaffer start office duty on June 11, 2018. Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; Exhibit "A" June 8, 2018 Letter.

**Response:      Undisputed.**

12.      On the same date, Ms. Goettler requested more clarification as to what Ms. Shaffer could and couldn't do. Ex. B Essential Duties List; Ex. L, Ms. Shaffer's Deposition, 25:23-26:8.

**Response:      Undisputed.**

13.      On June 14, 2018 Ms. Shaffer's doctor faxed the Township an essential job duty form with approved job duties for Ms. Shaffer. ECF 1 at ¶15; Ex. N, S. Goettler's Deposition,

20:12-23:8; Exhibit "B" Essential Duties List.

**Response:**      **Undisputed.**

14.      Once the Township received the list of restrictions, the Chief reviewed the restrictions and determined what work was available within Ms. Shaffer's limitations. Ex. N, S. Goettler's Deposition, 23:3-8; Ex. R, Typed Notes.

**Response:**      **Undisputed.**

15.      Ms. Shaffer volunteered that she is not sick and both she and her doctor were concerned with the high-risk situations that a patrol officer is sometimes subjected, as well as her limited amount of vacation and personal compensation time based on her minimal time on the job. Ex. R, Typed Notes.

**Response:**      **Undisputed, with the exception that no reference to "based on her minimal time on the job" appears in the record.**

16.      When on light-duty Ms. Shaffer was not allowed to be in uniform, could not carry weapons, and could not operate a patrol car, the same as other light duty officers. Ex. L, Ms. Shaffer's Deposition, 48:22-49:15.

**Response:**      **Undisputed.**

17.      The work available at this time included in part, phone call requests, walk-in complaints, fingerprints, follow-ups via phone call, warrants, affidavits, Pennsylvania Instant Check System ("PICS") firearms violations, fingerprints and community policing events as allowed by her doctor's recommendations. Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; 45:15-46:3; 62:9-63:17; Exhibit "C" June 22, 2018 Letter.

**Response:**      **Undisputed.**

18.      Ms. Shaffer was assigned these tasks.  Ex. L, Ms. Shaffer's Deposition, 23:5-25:11; 45:15-46:3; 62:9-63:17; Exhibit "C" June 22, 2018 Letter.

**Response:     Disputed in part; undisputed in part. Officer Shaffer was not assigned fingerprinting after July 26, 2018 (Meyer 148:14-149:2 (Def. Ex. O [Doc. 40-15]). PICS cases, and the corresponding warrants and affidavits, were also taken away from her after July 26, 2018 (Shaffer 109:6-13, 117:14-24, 128:4-129:9, Def. Ex. L [Doc. 40-12]). She was only allowed to handle walk-ins or phone calls when filling in for the clerical office staff when they were off work (Shaffer 65:9-66:7; Meyer 111:12-24).  She was never permitted to handle warrants or affidavits, nor is there any evidence to the contrary.**

19.     Ms. Shaffer began light duty in June 2018 and was also placed on a steady eight hours per day, Monday through Friday schedule. Exhibit "H" Emails, p. 1.

**Response:     Disputed. Chief Meyer explained that the schedule showed Shaffer as working 8:00-4:00 as a "placeholder," but that she was not actually scheduled those hours while on light duty (Meyer 157:18-159:1). *See also* Shaffer Time Sheets, Def. Ex. W [Doc. 40-23](showing lack of 40-hour workweeks).**

20.     Ms. Shaffer was given a set schedule when reception staff was off between June and September. Exhibit "B"; Ex. L, Ms. Shaffer's Deposition, 152:8-153:13; Exhibit "H" Emails, p. 1.

**Response:     Undisputed.**

21.     On light duty the shifts are 8 hours rather than 12 hours as they are for patrol shifts. Ex. L, Ms. Shaffer's Deposition, 75:5-9.

**Response:     Undisputed in part; disputed in part. As noted in the time sheets of Shaffer and other officers, not all light duty shifts are 8 hours. For example, Shaffer's light duty shifts were sometimes 6 hours, 4 hours, or even 2 hours. *See* Shaffer Timesheets, Def. Ex. W [Doc. 40-23] at 3, 4, 5, 6, 7, 8, 9, 11, 16, 17.**

22.     At times Ms. Shaffer was provided 40 hours of light duty work per week. Ex. L,

Ms. Shaffer's Deposition, 106:10-12; Exhibit "D" 2018 Paysheets.

**Response:**     **Undisputed. By way of further response, Ms. Shaffer worked 40 hours a total of _two_ weeks while on light duty: August 13-17 and August 27-31, 2018. She also worked 39.5 hours an additional week: July 16-21, 2018. _See_ Def. Ex. W, Doc. 40-23. Contrary to Defendant's contention, Exhibit D does not reflect Ms. Shaffer's hours in a given week. Instead, it indicates the hours she worked in a two-week pay period. As is clear from Exhibit D, Ms. Shaffer never worked 80 hours in a two-week pay period the entire time she was on light duty, from June 22, 2018 to December 2018. _See_ Exhibit D.**

23.     At other times, this work did not provide 40 hours of light duty per week. Exhibit "D" 2018 Paysheets.

 **Response:**     **Undisputed.**

24.     During the times in which the tasks did not provide forty hours a week, the Chief told Ms. Shaffer that she could not sit in the office waiting for phone calls and walk-ins to come in because they were infrequent. Ex. L, Ms. Shaffer's Deposition, 29:23-30:7; 63:22-65:1; 67:3-14, 72:14-22; ECF 1 at ¶¶12, 20; Ex. O, K. Meyer's Deposition, 111:12-25; Ex. L, Ms. Shaffer's Deposition, 45:2-11.

 **Response:**     **Undisputed that this is what the Chief said. Ms. Shaffer disputes the accuracy of this statement for the reasons set forth in response to Paragraph 25 below.**

25.     The Chief could not allow Ms. Shaffer to simply wait in the office for work because there were two additional secretaries who handled phone calls and clerical work. Ex. O, K. Meyer's Deposition, 142:3-143:1.

**Response:**     **Disputed. The Chief allowed Officers Shields, Kobistek, Evanson, and Kobistek to handle phone calls, walk-ins, and clerical work while on light duty (Meyer 35:11-21, 47:14-48:3, 80:17-81:11, 112:1-113:6, Def. Ex. O [Doc. 40-15]; Shields 13:22-15:5, 22:6-9,**

**Def. Ex. P [Doc. 40-16]). Moreover, secretaries did not handle phone calls that required the response of an officer (Shaffer Declaration ¶5, Plt. Ex. 1). Rather, if there were no officers on light duty, a patrol officer would have to return to the station from the road to handle such issues (Shields 17:24-18:18).**

26.    The Chief told Ms. Shaffer that he would provide her with additional opportunities for work. Ex. O, K. Meyer's Deposition, 105:5-23.

**Response:    Undisputed that the Chief stated this on June 12, 2018 (Meyer 104:6-105:23, Def. Ex. O [Doc. 40-15]).**

27.    The Chief spoke with Sergeant Irvin about Ms. Shaffer helping in the Detective's office but Irvin advised that work wasn't available at the time. Ex. O, K. Meyer's Deposition, 145:7-19. The Chief requested that Irvin let him know if any work became available for Ms. Shaffer. Ex. O, K. Meyer's Deposition, 145:7-19, 147:13-148:8.

**Response:    Disputed. While Chief Meyer testified as such, he is an interested witness whom a jury would not be required to believe, particularly given his inconsistent testimony, claiming on the one hand that Shaffer was not qualified to work in the Detective's Office, while claiming at the same time that he asked Sergeant Irvin for this allegedly unqualified work. *See* Meyer 144:8-24, Def. Ex. O [Doc. 40-15]. Moreover, Chief Meyer never told Shafer that he asked Sergeant Irvin if he had work for her. Rather, he simply told her she was not qualified (Shaffer Declaration ¶6, Plt. Ex. 1).**

28.    The Chief gave Ms. Shaffer as much time as was available that met her restrictions. Ex. O, K. Meyer's Deposition, 182:12-21.

**Response:    Disputed. The availability of additional work is a major factual dispute in this matter, which is addressed in detail in Plaintiff's Brief. Defendant, through Chief Meyer, allowed other officers on light duty to handle walk-ins, phone calls, PICS cases (Meyer**

7

**35:11-21, 47:14-48:3, 80:17-81:11, 112:1-113:6, Def. Ex. O [Doc. 40-15]; Shields 13:22-15:5,**

**22:6-9, Def. Ex. P [Doc. 40-16]). Other work was available within Ms. Shaffer's restrictions,**

**including fingerprinting, which Defendant originally allowed her to do, but then took away**

**from her (June 22, 2018 Letter, Def. Ex. C. [Doc. 40-3]; Meyer 148:14-149:2; Essential**

**Duties List, Def. Ex. B [Doc. 40-2]). Defendant had a higher call volume when Ms. Shaffer**

**was on light duty than when these other officers were on light duty. *See* Def. Answer to**

**Second Interrogatory No. 3, Plt. Ex. 4). This calls into question why Defendant could**

**provide these other officers set schedules and greater hours than Ms. Shaffer.**

<u>**Alleged Comparators:**</u>

29.     Ms. Shaffer claims that other officers were provided 40 hours a week on a set

schedule.  She relies on two memoranda about light duty employees, speaking to officers including

Shields, Weleski and Evanson, and consulting schedules.  Ex. L, Ms. Shaffer's Deposition, 61:12-

62:1; Exhibit "E" Memoranda.

**Response:     Undisputed.**

30.     Employees with work-related injuries requiring light-duty over the past ten years

are Officers Mark Shields, Rhonda Evanson, Jeffrey Kobistek, Weleski, William Roberts and

Sergeant William Ahlgren.  Ex. M, C. Mascellino's Deposition, 9:15-10:25; *See also*, Exhibit "F",

Ms. Shaffer's Answers to Defendant's First Set of Interrogatories.

**Response:     Undisputed.**

31.     Employees who have received light duty from a non-work-related injury have been

limited to Ms. Shaffer and Sergeant Irvin, though he did not actually work light duty. Ex. M, C.

Mascellino's Deposition, 9:15-10:25; *See* Exhibit "G" (CT_1203-4).

**Response:     Disputed in part; undisputed in part. Ms. Shaffer does not dispute that she**

**and Sergeant Irvin were the only employees who received light duty for non-work-related**

**injuries. However, the record does not support that Irvin "did not actually work light duty."**

**(Mascellino 10:17-22, Def. Ex. M [Doc. 40-13]); (Meyer 24:13-16, Def. Ex. O [Doc. 40-15]).**

32.     Officer Mark Shields is a patrol officer with Cranberry Township who was on light duty following a work related injury requiring rotator cuff surgery in late 2015. Ex. P, M. Shields' Deposition, 5:17-7:19; 34:2-10.

**Response:     Undisputed.**

33.     Ms. Shaffer spoke with Mark Shields on [sic] unidentified number of times on unidentified dates, regarding light duty. Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

**Response:     Undisputed.**

34.     Shields had a lifting restriction limited to 2, 5 and 10 pounds progressively, and a no climbing provision. Ex. O, K. Meyer's Deposition, 34:1-9.

**Response:     Undisputed.**

35.     When Officer Shields was first placed on light-duty on September 29, 2015, there was no work available for him to complete within his restrictions until October 22, 2015. Ex. X, Defendant's Answers to First Set of Interrogatories, p. 3.

**Response:     Undisputed.**

36.     To find light-duty work for Shields, Chief Meyer consulted with Sergeant Irvin, of the Detective's Office, about what tasks could keep Shields occupied around the station. Ex. O, K. Meyer's Deposition, 40:12-41:5.

**Response:     Disputed. While Meyer testified as such, his testimony is directly contradicted by Shields, who states that he did not work in the Detective's Office (Shields Declaration ¶¶1-3, Plt. Ex. 2).[1]**

---

[1] Shields testified at length regarding his duties while on light duty, and never mentioned anything regarding the detective's office. However, neither party's counsel asked him directly about this issue. Shaffer has now obtained a

37.     During his light duty, Shields assisted in the Detective's office, handled phone calls, walk-ins, assisted investigators and occasionally had court appearances. Ex. O, K. Meyer's Deposition, 34:17-37:15.

**Response:     Disputed in part; undisputed in part. Ms. Shaffer does not dispute that Officer Shields handled phone calls and walk-ins, assisted investigators, and occasionally had court appearances. However, Shields did not assist in the Detective's Office. (Shields Declaration ¶¶1-3, Plt. Ex. 2).**

38.     When an officer goes to court a situation could arise that would put an officer in harm's way, such that light-duty officers need to be accompanied by a full-duty officer. Ex. L, Ms. Shaffer's Deposition, 52:24-53:3.

**Response:     Undisputed.**

39.     During his light duty Shields was not able to perform arrests, pursue fleeing suspects, transport prisoners or fire weapons, though he was able to drive a law enforcement vehicle, monitor the radio, take phone call requests, PICS investigations, handle walk-ins, and help other officers on reports Ex. P, M. Shields' Deposition, 7:20-21:4; Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

**Response:     Undisputed. By way of clarification, Shields was able to drive, but not able to pursue fleeing suspects (Shields 8:8-18, Def. Ex. P). As Defendant notes in Paragraph 16 above, Ms. Shaffer was not able to drive a patrol car, "the same as other light duty officers."**

40.     Shields' primary focus was on investigations and helping the Detective's office, completing MPOETC training and assisting in records management system merging. Ex. O, K. Meyer's Deposition, 111:12-113:1.

**Response:     Disputed.  Although the Chief testified as such, Shields himself described his**

declaration from Shields to clarify his testimony on whether he worked in the detective's office.

**duties differently.** *See* **Shields Declaration ¶¶1-3, Plt. Ex. 2; Shields 10:20-11:7, 11:8-12;**

**11:13-12:4; 12:5-14, 12:17-13:6, 40:7-11, Def. Ex. S [Doc. 40-16]).**

41.     Officer Shields "probably" did civil fingerprinting, but not criminal prints as it was

unwise for someone on light duty to do so. Ex. P, M. Shields' Deposition, 39:20-43:4.

**Response:     Undisputed that Shields testified that he probably did civil fingerprinting,**

**and expressed his opinion as a non-manager that he did not think it would be a wise thing**

**for somebody on light duty to do criminal fingerprints.**

42.     During his light duty, Officer Shields did not not [sic] always work 40 hours a

week. Ex. P, M. Shields' Deposition, 24:5-25:25.

**Response:     Undisputed. By way of further response, the weeks that Officer Shields did not**

**work 40 related to (1) his doctor only releasing him to work four hours per day at first, and**

**(2) another officer, Officer Roberts, overlapping with Shields' light duty for a period of time.**

**Once Officer Roberts' light duty ended, Officer Shields was given a steady 8-hour schedule of**

**8:00-4:00 (Shields 24:5-25:25, Def. Ex. P [Doc. 40-16]).**

43.     Shields was able to get light duty work because he was working in the Detectives'

office. Ex. L, Ms. Shaffer's Deposition, 37:5-9; Ex. O, K. Meyer's Deposition, 34:17-37:15.

**Response:     Disputed. Shields did not work in the Detective's Office. (Shields Declaration**

**¶¶1-3, Plt. Ex. 2).**

44.     A minimum of five years with the Township is required to work in the Detective's

Office. Ex. M, C. Mascellino Deposition, 49:17-50:25; Ex. O, K. Meyer's Deposition, 143:2-

144:24.

**Response:     Disputed in part; undisputed in part. Chief Meyer testified that the five-year**

**minimum to work in the detective's is not written anywhere, and he could have made an**

**exception if he wanted to (Meyer 144:14-145:8, Def. Ex. O [Doc. 40-15]). Indeed, he claimed**

that he asked Sergeant Irvin if he had work for Ms. Shaffer in the detective's office. *Id.* at 145:8-19. He further testified that if Sgt. Irvin had work available in the detective's office, he would have evaluated that work to determine whether it fit her needs. *Id.* at 147:4-148:5. Additionally, several new hires in their first year of employment have placed in the detective's office to do job shadowing and work on affidavits and warrants (Mascellino 51:11-52:11, Def. Ex. M [Doc. 40-13]).

45.     Ms. Shaffer did not qualify for Detective's Office work. Ex. L, Ms. Shaffer's Deposition, 31:12-34:18.

**Response:     Disputed, for the reasons set forth in response to Paragraph 44 above. Moreover, Ms. Shaffer's testimony does not reflect her own belief, but rather explained what Chief Meyer told her: "the chief specifically said that he gave Mark [Shields] full-time 40 hours a week because he had him in the detectives' office, and I didn't qualify for that" (Shaffer 34:15-18, Def. Ex. [Doc. 40-12]).**

46.     Officer Roberts worked intermittent modified duty in 2013 and 2015 in relation to work related injuries. Ex. O, K. Meyer's Deposition, 41:6-45:9.

**Response:     Undisputed.**

47.     In 2013, Officer Roberts' light duty focus was office duties, making PDF documents, attaching information for the records management system, and assisting the fire company with their alarm billing. Ex. O, K. Meyer's Deposition, 45:18-47:8.

**Response:     Undisputed.**

48.     In 2015 Officer Roberts' light duty work was similar, including answering phone calls, handling walk-in complaints, and providing general assistance. Ex. O, K. Meyer's Deposition, 47:9-48:9.

**Response:     Undisputed.**

49.     Roberts did not have a set schedule and was told that the time could change depending on work availability. Ex. O, K. Meyer's Deposition, 51:7-17.

**Response:       Disputed. While Chief Meyer testified he did not recall Roberts having a set schedule, Shields testified that when he and Roberts' light duty overlapped, Roberts worked 8:00 am to noon, and Shields came in after Roberts left from noon to 4:00 (Shields 24:10-25:20, Def. Ex. P [Doc. 40-16]). Moreover, Roberts' 2015 light duty timesheets show a steady schedule of eight or nine hours per day, five days per week, until he overlapped with Shields' light duty, at which time he worked four hours per day, five days per week. Def. Ex. T at 15-26.**

50.     Ms. Shaffer does not know whether Shields and Roberts had enough light duty work to keep them busy during scheduled shifts. Ex. L, Ms. Shaffer's Deposition, 67:17-68:11; 71:14-19.

**Response:       Disputed in part; undisputed in part. While Ms. Shaffer that she has no firsthand knowledge of whether Shields and Roberts had enough work to keep themselves busy, Shields himself testified that he was able to keep himself busy, and "without a doubt" was able to contribute meaningful policework (Shields 23:25-24:9, Def. Ex. P [Doc. 40-16]). This is evidence of which Ms. Shaffer does not have personal knowledge, but which the Court can consider.**

51.     In looking at the schedules, Ms. Shaffer does not know whether people left early or used paid time off because there was no work to do. Ex. L, Ms. Shaffer's Deposition, 72:5-8.

**Response:       Undisputed in part; disputed in part. While the schedules themselves would not show when people left early or used paid time off, the officers' time sheets would show the hours that they actually worked versus when they used paid time off. *See* Def. Exhibits S through V; *see also* Defendant's Paragraph 69 below.**

52.     The Chief circulated two memoranda regarding employees Kobistek and Evanson on their light duty abilities. Ex. O, K. Meyer's Deposition, 54:4-56:15; Exhibit "E" Memoranda.

**Response:**     **Undisputed.**

53.     Ms. Shaffer contends that these individuals were given a set schedule to sit in the office and wait for phone calls and walk-ins and worked more hours than she received, where she did not receive a set schedule other than at the beginning of her light duty. Ex. L, Ms. Shaffer's Deposition, 38:12-39:11.

**Response:**     **Undisputed.**

54.     The Chief would give her a schedule a week in advance with varied hours. Ex. L, Ms. Shaffer's Deposition, 38:12-39:11.

**Response:**     **Undisputed.**

55.     Ms. Shaffer agrees that based on the memoranda, Officer Evanson was not scheduled for 40 hours of light duty work a week. Ex. L, Ms. Shaffer's Deposition, 80:18-81:22.

**Response:**     **Undisputed.**

56.     During her light duty, Evanson focused on correctly merging addresses in the Records Management System, handling phone calls, and walk-ins. Ex. O, K. Meyer's Deposition, 79:23-81:11.

**Response:**     **Undisputed.**

57.     Ms. Shaffer agrees that based on the memoranda, Officer Kobistek was not scheduled to work eight hour shifts of light duty. Ex. L, Ms. Shaffer's Deposition, 90:21-91:15.

**Response:**     **Undisputed.**

58.     Kobistek was not provided a set schedule and it was determined on a weekly basis. Ex. O, K. Meyer's Deposition, 60:18-25.

**Response:**     **Disputed.   While Chief Meyer testified as such, this is directly contradicted by**

**the memorandum he wrote, which set forth a set schedule for Officer Kobistek.** *See* **Def. Ex. E (Doc. 40-5) at 2.  Kobistek's time sheets reflect that he indeed was scheduled for, and/or worked, a set schedule on Mondays, Wednesdays, and Fridays from late February to early May 2015.** *See* **Def. Ex.  U (Doc. 40-21) at 3-12.**

59.     During his light duty, Kobistek's primary focus was correcting and merging addresses in the Records Management System when the Department made a transition between software. Ex. O, K. Meyer's Deposition, 65:15-66:19.

**Response:**     **Undisputed.**

60.     Kobistek did not perform fingerprinting services during his light duty. Ex. O, K. Meyer's Deposition, 67:11-68:1.

**Response:**     **Undisputed.**

61.     Ms. Shaffer does not know whether Shields or Kobistek went to court when they were on light duty. Ex. L, Ms. Shaffer's Deposition, 110:2-23.

**Response:**     **Undisputed.**

62.     Officer Weleski was on light-duty for a work related incident though Ms. Shaffer did not know what his medical or work restrictions were. Ex. L, Ms. Shaffer's Deposition, 54:3-56:8.

**Response:**     **Undisputed.**

63.     Officer Weleski had a substantial caseload, including working on the Records Management System, and he worked 40 hours, full-time on a normal schedule. Ex. L, Ms. Shaffer's Deposition, 54:3-56:8; K. Meyer Deposition, 82:15-83:13. Officer Weleski returned to work without restrictions within two weeks of his injury in May 2017. Ex. Q, CT_1317.

**Response:**     **Undisputed.**

64.     Sergeant Ahlgren took light duty when he was a Patrol Sergeant, a supervisory

position over the patrol officers. Ex. O, K. Meyer's Deposition, 88:10-93:9.

**Response:**     **Undisputed.**

65.     The Patrol Sergeant position was document intensive and required Ahlgren to handle many duties that required experience, extensive training and time on the job that Ms. Shaffer did not have. Ex. O, K. Meyer's Deposition, 88:10-93:9.

**Response:**     **Undisputed.**

66.     A Sergeant has more paperwork to do than a patrol officer. Ex. L, Ms. Shaffer's Deposition, 131:8-10.

**Response:**     **Undisputed.**

67.     There was no records management system merging needed during Ms. Shaffer's light duty. Ex. O, K. Meyer's Deposition, 112:21-113:1.

**Response:     Disputed. The Department continued to need to correct and merge addresses in the RMS while Shaffer was on light duty. This was approximately a daily occurrence. For example, the system is not supposed to include abbreviations. If Shaffer received a call for service at 1234 at Long Road, she needed to spell out "Road." If the system also included "1234 Long Rd," she would need to merge the addresses with the correct long-form spelling. (Shaffer Declaration ¶3, Plt. Ex. 1).**

68.     Had such work been available, Chief would have assigned it to Ms. Shaffer. Ex. O, K. Meyer's Deposition, 142:3-143:1.

**Response:     Disputed. This alleged "fact" calls for speculation, and is not consistent with the other types of work that was available, but was not provided to Ms. Shaffer, while she was on light duty.**

69.     Employees fill out a time sheet every two weeks to reflect the hours they have actually worked each day. Ex. O, K. Meyer's Deposition, 38:4-39:5.

**Response:        Undisputed.**

70.     During Kobistek's light-duty period between February 2015 and April 2016, he worked approximately 400 hours.  Ex. O, K. Meyer's Deposition, 182:1-183:19; Ex. U, Kobistek's Timesheets.

**Response:        Undisputed, but incomplete. Kobistek worked 382.5 hours, and took off 125.5 hours available to him, for a total of 508 available light duty hours over a period of 22.2 weeks.** *See* **Def. Ex. U [Doc. 40-21].**

71.     During Shields' light duty between October 2015 and the end of 2015, he worked approximately 200 hours.  Ex. O, K. Meyer's Deposition, 184:2-185:6; Ex. S, Shields' Timesheets.

**Response:        Undisputed, but incomplete. Shields worked 225.5 hours, and took off 75 hours that were available to him, for a total of 300.5 available light duty hours over a period of 8.4 weeks.** *See* **Def. Ex. S [Doc. 40-19].**

72.     During Roberts' light duty between May 2015 and September 2016, he worked approximately 500 hours.  Ex. O, K. Meyer's Deposition, 184:2-185:6; Ex. T, Roberts' Timesheets.

**Response:        Undisputed, but incomplete. Roberts worked 529.5 hours, and took off 95 hours that were available to him, for a total of 624.5 available light duty hours over a period of 14.5 weeks.  ** *See* **Def. Ex. T [Doc. 40-20].**

73.     During Ms. Evanson's light duty she worked approximately 980 hours between June 2013 and November 2014; Ex. V, Evanson's Timesheets.

**Response:        Undisputed, but incomplete. Defendant has used Evanson's total hours** *available* **in this Paragraph, while using the other officers' total hours** *worked* **in Paragraphs 70 through 72. Evanson worked 709 hours, and took off 267 hours that were available to her, for a total of 976 available light duty hours over a 44.2-week period.** *See* **Def. Ex. V [Doc. 40-**

**22].**

74.     During Ms. Shaffer's approximately six month light-duty period, she worked over

400 hours. Ex. O, K. Meyer's Deposition, 182:1-183:19; Ex. W, Ms. Shaffer's Timesheets.

**Response:     Undisputed, but incomplete. Shaffer worked 420.5 hours, and took off 16**

**hours that were available to her, for a total of 436.5 available light duty hours over a 26.2-**

**week period.** *See* **Def. Ex. W [Doc. 40-23].**

75.     The Chief looked for every opportunity to provide Ms. Shaffer with work. Ex. O,

K. Meyer's Deposition, 182:1-183:19; *See entirety*, Ex. H, Emails.

**Response:     Disputed. The only evidence of this alleged fact is the testimony of Chief**

**Meyer, an interested witness. This testimony is inconsistent with the record as a whole,**

**including: Defendant, through Chief Meyer, allowed other officers on light duty to handle**

**walk-ins, phone calls, PICS cases (Meyer 35:11-21, 47:14-48:3, 80:17-81:11, 112:1-113:6,**

**Def. Ex. O [Doc. 40-15]; Shields 13:22-15:5, 22:6-9, Def. Ex. P [Doc. 40-16]). Other work**

**was available within Ms. Shaffer's restrictions, including fingerprinting, which Defendant**

**originally allowed her to do, but then took away from her (June 22, 2018 Letter, Def. Ex. C.**

**[Doc. 40-3]; Meyer 148:14-149:2; Essential Duties List, Def. Ex. B [Doc. 40-2]). Defendant**

**had a higher call volume when Ms. Shaffer was on light duty than when these other officers**

**were on light duty.** *See* **Def. Answer to Second Interrogatory No. 3, Plt. Ex. 4). This calls**

**into question why Defendant could provide these other officers set schedules and greater**

**hours than Ms. Shaffer.**

**Retaliation Based Facts:**

76.     On or about July 11, 2018 Ms. Shaffer filed a Notice Charge of Discrimination with

the Equal Employment Opportunity Commission which the Township received on July 13, 2018.

*See* Exhibit "I" Notice of Charge.

**Response:     Undisputed.   By way of clarification, Ms. Shaffer did not file merely a "notice of charge," but rather completed a charge form.** *See* **Original EEOC Charge and Inquiry, Plt. Ex. 10.**

77.     Ms. Shaffer filed a Charge on November 7, 2018 alleging that the Department and the Chief refused to schedule her for a regular 40 hours week of light duty, though they had previously accommodated light duty requests of male officers. Exhibit "J" Charge.

**Response:     Undisputed.**

78.     On July 26, 2018 Ms. Shaffer met with the Chief and Ms. Goettler regarding her schedule and work availability. Ex. "R" Typed Notes.

**Response:     Undisputed, but incomplete. Ms. Shaffer, Chief Meyer, and Ms. Goettler also discussed Ms. Shaffer's EEOC charge at this meeting. (Shaffer 93:11-94:3, Def. Ex. L [Doc. 40-12]; Meyer 135:6-24, Def. Ex. O [Doc. 40-15]).**

79.     During the meeting they talked about Ms. Shaffer's schedule, upcoming opportunities for work, fingerprinting and the Notice of Charge. Ex. "R" Typed Notes.

**Response:     Undisputed.**

80.     During the meeting Ms. Shaffer broached handling burning DVDs for DUI cases, though the same requires special permissions that Ms. Shaffer did not have and that the Chief was not comfortable providing her based on her limited amount of time on the job. Ex. O, K. Meyer's Deposition, 139:12-140:22.

**Response:     Undisputed in part; disputed in part. The parties discussed burning DVDs at this meeting. It was not until afterward that Chief Meyer decided he was uncomfortable providing this assignment to Shaffer (Meyer 139:12-140:2, Def. Ex. O [Doc. 40-15]).**

81.     Patrol officers are not given the task of burning DVDs and instead this is handled by Sergeant Ahlgren and Corporal Och. Ex. O, K. Meyer's Deposition, 139:6-141:7.

**Response:        Undisputed.**

82.     Ms. Shaffer wanted 40 hours of consistent work claiming that Officer Shields, Kobistek and another officer had consistent desk duty work. Ex. N, S. Goettler's Deposition, 29:23-30:13.

**Response:        Undisputed.**

83.     The Chief said that he was trying to provide Ms. Shaffer with a schedule a week in advance with meaningful police work. Ex. L, Ms. Shaffer's Deposition, 94:5-7.

**Response:        Undisputed that this is what the Chief said.**

84.     The Chief was providing the work available at that time that met her restrictions. Ex. O, K. Meyer's Deposition, 138:13-21.

**Response:        Disputed in part; undisputed in part. It is undisputed that the work the Chief provided was within Shaffer's restrictions. However, Ms. Shaffer disputes that she was provided *all* the work available within her restrictions. As set forth in response to Paragraphs 25 and 28 above, the Chief allowed other officers to perform office duties, such as clerical work, taking walk-ins and phone calls, and working on PICS cases, but did not provide this work to Ms. Shaffer.**

85.     At the time of the meeting, the Township was only in receipt of the Notice of Charge from Ms. Shaffer, without any specific allegations contained therein. *See* Exhibit "I" Notice of Charge; Exhibit "J" Charge.

**Response:        Disputed in part; undisputed in part. The Notice of Charge does not contain specific factual allegations, but indicates that Ms. Shaffer alleged sex discrimination under Title VII occurring June 11, 2018, and noted the issues of "accommodations, terms/conditions, wages." *See* Def. Ex. I (Doc. 40-9).**

86.     During the meeting the Chief and Goettler asked what they could do to remedy the

situation, and indicated that the Chief wanted to maintain open communication with Ms. Shaffer regarding what she felt she could and couldn't do. Ex. L, Ms. Shaffer's Deposition, 93:6-20; Ex. N, S. Goettler's Deposition, 29:23-30:13.

**Response:**          **Undisputed.**

87.     Ms. Shaffer alleges retaliation based upon the reduction of hours and duties that she was previously authorized to perform following the meeting. Ex. L, Ms. Shaffer's Deposition, 139:16-140:1.

**Response:**          **Undisputed.**

88.     Ms. Shaffer claims the Chief began cutting her duties and no longer allowed her to process Pennsylvania Instant Check System ("PICS") firearm application violations cases or to handle fingerprints following the meeting. ECF 1 at ¶18.

**Response:**          **Undisputed.**

89.     The reason the Chief took PICS away from Ms. Shaffer was because he was uncomfortable with Ms. Shaffer being in court or in the field as she could not effectuate an arrest, thought that it was not in her best interest, and was contradictory to her doctor's recommendations. Ex. O, K. Meyer's Deposition, 148:9-153:19; Ex. L, Ms. Shaffer's Deposition, 118:1-10.

**Response:          Disputed. A reasonable jury could disbelieve this explanation based on the timing of the decision (less than two weeks after it received notice of Ms. Shaffer's charge of discrimination); the fact that nothing changed in her restrictions between the time the Chief approved these duties and when he took them away; and that he assigned other officers, including Shields, PICS cases while on light duty. *See* Shields 11:8-20, Def. Ex. S [Doc. 40-16]; Defendant's Answer to Second Interrogatory No. 2, Plt. Ex. 4.**

90.     Ms. Shaffer was allowed to do civil and criminal fingerprinting until July 26th when the criminal fingerprinting task was removed because there was a likelihood that she would have

to take individuals into custody, and based upon her doctor's list of appropriate duties and Ms. Shaffer's own comfort level, should not occur. Ex. L, Ms. Shaffer's Deposition, 84:2-90:9; Ex. N, S. Goettler's Deposition, 29:23-30:23; Ex. P, M. Shields' Deposition, 41:15-42:18; Ex. M, C. Mascellino's Deposition, 22:20-23:20.

**Response:**        **Disputed in part; undisputed in part. A reasonable jury could disbelieve this explanation based on the timing of the decision (less than two weeks after it received notice of Ms. Shaffer's charge of discrimination) and the fact that nothing changed in her restrictions between the time the Chief approved these duties and when he took them away. Notably, the Defendant specifically cleared Ms. Shaffer for fingerprinting duty after reviewing her doctor's restrictions. *See* June 22, 2018 Letter, Def. Ex. C (Doc. 40-3); *see also* Shaffer Timesheets at 3, 5, 6, 7, Def. Ex. W (Doc. 40-23)(showing "prints" as a job duty). Moreover, the only reference in the record to Ms. Shaffer's "comfort level" was that she was not comfortable being in uniform while 5 months pregnant (Shaffer 85:20-86:6, Def. Ex. L [Doc. 40-12]).  Ms. Shaffer never said that she would not do fingerprinting based on her own comfort level (Shaffer Declaration ¶7, Plt. Ex. 1).**

91.        Ms. Shaffer claims that the Chief previously gave her a schedule a week in advance but that stopped after she filed the Charge. Ex. L, Ms. Shaffer's Deposition, 100:6-12.

**Response:**        **Undisputed.**

92.        In early September 2018 the Township granted a request by Ms. Shaffer to invoke a two week notice for schedule changes as provided by the Department's Collective Bargaining Agreement. *See* Exhibit "K" September 6, 2018 Letter.

**Response:**        **Undisputed.**

93.        Invoking the two week notice period forced the Chief to restrict her duties further than her doctor's recommendations because he could only schedule her for work he was aware of

two weeks in advance. Ex. O, K. Meyer's Deposition, 182:12-21.

**Response: Disputed. A jury could disbelieve this explanation, given that the Chief was able to provide a consistent 40-hour per week schedule to Officer Shields after he invoked the two-week notice provision while he was on light duty. (Shields, Def. Ex. P [Doc. 40-16] 30:14-15; 31:23-32:2; 37:20-24; Shields' Timesheets beginning 11/15/2015, Def. Ex. S [Doc. 40-19] at 5-10). Moreover, Officers Kobistek and Evanson had a set schedule that continued for well over two weeks after setting that schedule, as set forth in the memoranda that Chief Meyer distributed.** *See* **Memoranda, Def. Ex. E (Doc. 40-5); Evanson Timesheets, Def. Ex. V (Doc. 40-22); Kobistek Timesheets, Def. Ex. U (Doc. 40-21).**

Respectfully submitted,

**ELZER LAW FIRM, LLC**

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157

100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-8436

Attorney for Plaintiff

23

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2021, I served a copy of the foregoing Plaintiff's Response to Defendant's Concise Statement of Material Facts upon all counsel of record via CM/ECF.


<u>/s/ Christine T. Elzer</u>
Christine T. Elzer