IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIFFANI M. SHAFFER, | Civil Action |
| Plaintiff, | No. 19-1481 |
| v. | Judge Christy Criswell Wiegand |
| CRANBERRY TOWNSHIP, | |
| Defendant. | |

**PLAINTIFF'S PRETRIAL STATEMENT**

Plaintiff, Tiffani M. Shaffer, by undersigned counsel, and pursuant to LCvR 16.1(C)(1), files this Pretrial Statement as follows.

**A. Narrative Statement**

Defendant, Cranberry Township, provided significantly fewer light duty opportunities to Tiffani Shaffer, a pregnant police officer, than it provided to nonpregnant officers with similar work restrictions. Defendant materially reduced Ms. Shaffer's hours and failed to provide her a set schedule. As such, she was treated less favorably than employees not affected by pregnancy, but "similar in their ability or inability to work."

Ms. Shaffer graduated from the Indiana University of Pennsylvania Police Academy in November 2012. She then worked for the Butler County Sheriff's office from November 2012 to January 2017. While working for the Sheriff's office, she also worked for the Butler Community College campus police, and then as a patrol officer for Saxonburg Borough.

On January 9, 2017, Ms. Shaffer began working for Cranberry Township Police Department as a patrol officer. On the same day, Cranberry Township Police Department hired its only other current female officer, Robin Mammarelli. The Township employs 31 police officers,

1

and three civilians that do clerical work in the office. Ms. Shaffer, like all police personnel, ultimately reported to Chief Kevin Meyer.

Cranberry Township has no written policy for light duty or modified duty for patrol officers. Police employees who have worked light duty include Officers Mark Shields, Jeffrey Kobistek, William Roberts, Rhonda Evanson, Michael Weleski; Sergeants Irvin and Ahlgren; and Chief Meyer.

In 2015, Officer Mark Shields had a work-related injury that made him unable to perform some of the essential functions of his job as patrolman. While on light duty, Officer Shields was unable to perform arrests, fire a weapon, transport prisoners, pursue fleeing suspects, or lift a certain amount of weight. At that time of his light duty, Officer Shields was supervised by Chief Meyer and Sergeant Chuck Mascellino. Prior to Officer Shields being released to work light duty, Defendant's Human Resources Department described the following light duty activities to his physician's office:

- Handle and document telephone calls on station that would otherwise require a duty officer's response.
- Handle and document walk-in complaints that would otherwise require a duty officer's response. These can be handled through the reception window.
- Correct and merge addresses in the RMS.
- Conduct any relevant or required on-line training.

Officer Shields' light duty work included listening to the radio and helping officers on the road; making call requests; working on PICS cases; assisting walk-ins, pre-populating information on other officers' reports, and doing civil fingerprinting. Officer Shields was permitted to attend court while on light duty. Shields was able to keep himself busy while on light duty for 40 hours a week and contributed meaningful police work during that time.

Officer Roberts was on light duty for work related injuries in both February 2013 and May 2015. On both occasions, Officer Roberts was unable to perform the essential functions of

his job as patrolman. Chief Meyer was involved in assigning the duties to Officer Roberts.

On August 7, 2015, Chief Meyer sent Officer Roberts a letter stating:

> You will be working 8am-4 pm, M-F in a light duty capacity, consistent with your release to return to work issued by PA [redacted] dated July 23, 2015. Your responsibilities will include answering phones and handling walk-in complaints as well as any other general office duties that can be completed in a sedentary fashion.

During his light duty in 2015, Officer Roberts answered phones, filled in for clerical staff, managed walk-in complaints, and assisted other officers.

Officer Kobistek was first on light duty January 2015 to May 2015, and second time beginning January 2016. On February 5, 2015, Defendant's Human Resources department sent Officer Kobistek a letter, stating, *inter alia*:

> Given the information obtained from your physician, Chief Meyer has identified temporary light duties consistent with in your restrictions. Since you are not capable of performing the essential duties and functions of a police officer, even with reasonable accommodations, this job involves performing administrative duties such as handling and documenting calls on station that would otherwise require a duty officer's response, report filing, data entry, and corrections and merging addresses in the RMS.

On February 18, 2015, Chief Meyer distributed a memo stating that Officer Kobistek would work Monday through Friday each week for four-hour shifts, and was permitted to handle phone calls, walk-in complaints, and merge addresses on the RMS computer system. While on light duty, Officer Kobistek also focused on completing his in-service training.

Officer Rhonda Evanson sustained a work-related injury that made her unable to perform the full functions of a patrol officer. On February 24, 2014, Chief (then-Lieutenant) Meyer distributed a memo stating that Officer Evanson would work Monday, Wednesday, and Friday from 8:00 am to 3:00 pm, and was permitted to handle phone calls, walk-in complaints, and merge

3

addresses on the RMS computer system. While on light duty, Officer Evanson corrected and merged addresses in the RMS system, and handled phone calls, documents, and walk-in complaints.

On or around April 11, 2018, Ms. Shaffer told Stacy Goettler, Human Resources Manager, that she suspected she was pregnant, and inquired about a light duty policy. Ms. Goettler told Ms. Shaffer there was no light duty policy. On or around May 14, 2018, Ms. Shaffer told Chief Meyer that she was pregnant. Chief Meyer said he would base any light duty assignments on what Shaffer's doctor recommended or restricted, when that time arose.

With Ms. Shaffer's approval, Ms. Goettler faxed Ms. Shaffer's doctor a list of essential duties, which was returned with her doctor's notes on it indicating what duties Ms. Shaffer could continue performing on light duty. The list of duties Ms. Shaffer was permitted to continue performing included: prepare investigative and other reports; interview and obtain statements from witnesses and suspects; attend court proceedings; endure verbal and mental abuse in an antagonistic environment; and process arrested suspects through taking photographs and fingerprints, among other duties.

During a phone call with Chief Meyer and Ms. Goettler regarding the essential duties list, Chief Meyer told Ms. Shaffer he would permit her to do light duty hours in the office taking phone calls and walk-in complaints. However, the only times on light duty that Ms. Shaffer was permitted to handle phone calls and walk-in complaints was when she was scheduled to fill in for clerical staff while they were on vacation.

During the same call, Chief Meyer said that Ms. Shaffer could do Pennsylvania Instant Check System (PICS) investigation cases, civil and criminal fingerprints, and community policing events.

Ms. Shaffer was not given a set schedule with her light duty hours. Instead, Chief Meyer often scheduled Ms. Shaffer to work with only 24-48 hours advance notice.

On July 2, 2018, Ms. Shaffer filed a charge of discrimination with the EEOC as a result of the limited working hours she was afforded compared to other officers previously on light duty. On July 13, 2018, Cranberry Township received notice of Ms. Shaffer's EEOC charge.

On July 26, 2018, less than two weeks after the Township received notice of Ms. Shaffer's EEOC charge, Chief Meyer, Ms. Goettler and Ms. Shaffer attended a meeting at Chief Meyer's request. At the meeting, Chief Meyer and Ms. Goettler asked Shaffer why she filed the EEOC charge, and what they could do to remedy it. In response, Ms. Shaffer stated that the situation could be remedied if she received a set schedule as others had been given in the past, as well as 40 hours per week.

At the same meeting, Chief Meyer explained that he would no longer allow Ms. Shaffer to do criminal fingerprinting, even though the list of approved essential duties from her doctor permitted fingerprinting. Chief Meyer said that criminal fingerprinting was dangerous; however, there has never been a violent incident during fingerprinting that he is aware of. The June 22 letter approving light duty specifically stated, "you have been cleared to perform fingerprinting detail as it is scheduled."

Chief Meyer told Shaffer that he was previously able to give Officer Shields full time duty because he had enough experience to work in the detective's office. Chief Meyer testified that Shields' work in the detective's office included answering phones and handling walk-in complaints. However, Officer Shields has sworn that he did not work in the detective's office while on light duty.

At the meeting, Ms. Shaffer asked Chief Meyer if she could work with Corporal Och with

burning DVDs per Corporal Och's request. Chief Meyer later talked to Corporal Och, and decided not to allow Shaffer to burn DVDs, claiming she lacked the necessary experience.

At the meeting, Ms. Shaffer asked Chief Meyer if she would work in the detective's office, but he said she did not have five years of necessary experience. Chief Meyer could have made an exception to the general practice that a patrol officer works for five years before being permanently placed in the detective's office

After the July 26 meeting, Chief Meyer cut previously approved duties from Ms. Shaffer's workload, such as phone calls, walk-ins, fraud investigations, identity theft investigations, PICS cases, and criminal fingerprinting. Chief Meyer removed her ability to take walk-in and phone call requests even on the days that she was already working in the receptionist's office. Without the ability to take walk-ins, phone calls, fraud investigations, identity theft investigations, and PICS cases, Ms. Shaffer was also unable to continue performing other duties such as follow up investigations and attending court.

Before the July 26 meeting, Ms. Shaffer worked an average of 29.7 hours each week for the first 5 weeks she was on light duty. After the July 26 meeting, she worked an average of 14.9 hours each week for the remaining 21 weeks of her light duty. After deducting the hours that Chief Meyer had already prescheduled for Ms. Shaffer before she filed her EEOC charge, Ms. Shaffer worked an average of 10.3 hours per week for the remaining 21 weeks of her light duty.

The Collective Bargaining Agreement ("CBA") between the Township and the police union provides:

> The Township shall post schedules for six (6) weeks of work at least two (2) weeks prior to the effective date of said schedule. Two weeks' notice shall be provided of any schedule changes, except in the case of an emergency or other circumstances beyond the Township's control.

In early September 2018, Ms. Shaffer contacted two people in the union about the two-week provision in the CBA. The union individuals spoke to Chief Meyer, who agreed to follow the CBA by giving Ms. Shaffer two weeks' notice of her schedule. Ms. Shaffer believed that applying this provision would afford her a set schedule in advance. However, after raising the provision, the only days Ms. Shaffer was scheduled to work in advance were the days that the office staff were on vacation.

Chief Meyer discontinued calling Ms. Shaffer to fill in for employees who called off, even though the union sees this as acceptable practice and an exception to the two-week notice rule. In fact, adding shifts to Ms. Shaffer's schedule with less than two-week's notice is permitted when the change is voluntary.

Officer Mark Shields had a different experience after raising the two-week notice rule in the CBA. After he brought this provision to Chief Meyer's attention, he was scheduled 8 hours each day, 5 days each week, for the remainder of his light duty. Officer Shields' schedule was set every two weeks so that he knew in advance when he would be working.

Officers' time sheets show the hours that they actually worked, as well as hours that they took off due to vacation, sick, and comp time. If an officer takes vacation, sick, and comp hours, those hours were available for the officer to work, but the officer took off by choice. All "available hours" referenced below reference hours actually worked, plus hours available but not used due to the officers' choice.

While Ms. Shaffer was on light duty, she was not permitted to take sick time, vacation time, or comp time for hours she was *not* scheduled to work. Rather, she could only take paid time off if she was already scheduled in the first place. . For example, if Ms. Shaffer was only scheduled for four hours of work, she could not supplant those hours worked with another four hours of sick

7

time in order to get paid for eight hours. Thus, when Ms. Shaffer was not scheduled for work, she had no option to be paid. On the other hand, when other officers were on light duty and had set schedules, they were permitted to take paid time off during the hours they were scheduled.

During Ms. Shaffer's 26.2 weeks of light duty, her available hours were an average of 16.7 hours per week per week. During Ms. Shaffer's light duty period, there were four weeks where she was scheduled zero hours, and seven weeks where she was scheduled between two and eight hours. No other officer on light duty was scheduled for zero hours in any week, other than while on leave or vacation. With the exception of Officer Shields' first week of light duty, no other officer on light duty was scheduled for eight hours or less in any week.

Officer Shields was on light duty for nine weeks and had an available hours average of 35.8 hours per week. The beginning of Officer Shields' light duty period overlapped with Officer Roberts' light duty period, during which he and Officer Roberts each worked four-hour shifts five days per week. Once Officer Shields' light duty stopped overlapping with Officer Roberts' light duty, he was scheduled an average of 42.9 hours per week.

During Officer Roberts' light duty period, his available hours were an average of 43.1 hours per week. During Officer Kobistek's light duty period, his available hours were an average of 22.9 hours each week.
Chief Meyer was able to provide light duty to both Officer Shields and Officer Roberts at the same time, with each being scheduled five days per week, four hours per day, such that they together covered one eight-hour shift. Once Officer Roberts' light duty ended, Officer Shields was scheduled on light duty for eight hours each day. At the time Officer Shaffer was pregnant, on the other hand, no other police officers had any work restrictions.

Officer Evanson was on light duty for 44.2 weeks and worked an average of 22 hours per

week. For the last 40 weeks of her light duty period, Officer Evanson worked a set schedule of three seven-hour days.

The light duty treatment of the various officers can be summarized as follows:

| Officer | Average Available[1] Hours per week | Total Hours | # of weeks | Lowest hours per week (non-vacation/ leave) | Set schedule? |
|---|---|---|---|---|---|
| Shaffer | 16.7 | Worked: 420.5 Time Used:[2] 16 436.5 Total | 26.2 | 0 | No |
| Evanson | 22 | Worked: 709 Time Used: 267= 976 Total | 44.2 | 10 | Yes |
| Kobistek | 22.9 | Worked: 382.5 Time Used: 125.5= 508 | 22.2 | 12 | Yes |
| Shields | 35.8 | Worked: 225.5 Time Used: 75= 300.5 Total | 8.4 | 8 (first week) / 20 otherwise | Yes |
| Roberts | 43.1 | Worked: 529.5 Time Used: 95= 624.5 Total | 14.5 | 11.5 (final week) 22 otherwise | Yes |

During the time that Ms. Shaffer was on light duty, there were 4 PICS cases available. However, she was not permitted to work on PICS cases after the July 26 meeting. During the time that Officer Shields was on light duty, he was assigned 4 PICS cases.

Defendant has received more "calls" in its RMS system each year since 2015, as follows:

    2015 (Shields, Roberts, Kobistek light duty): 15,204
    2016 (Kobistek, Roberts light duty):17,009

---

[1] "Available" refers to the hours that the officers actually worked, plus the time they had available but chose to take off for sick, vacation, or comp time. It does not include off-duty holiday pay or medical leave.
[2] "Time Used" refers to sick, vacation, and comp time that the officers voluntarily used while scheduled for work. It does not include off-duty holiday pay or medical leave.

9

        2017 (Weleski light duty): 19,257
        2018(Shaffer light duty): 20,287

"Calls" include walk in complaints, phone call requests, court time, preparing investigative reports, preparing as well as affidavits and warrants, and fingerprinting. The higher number of RMS calls that the Department receives, the busier the Department is. During the time that Officer Shaffer was on light duty, the Department had about 25% more calls than it did when Shields, Roberts, and Kobistek were on light duty in 2015.

### B. Statement of Damages

Plaintiff seeks back pay, plus interest, grossed up to account for negative tax consequences. Plaintiff also seeks compensatory damages, attorneys' fees, and costs.

From the time that Plaintiff worked light duty to the time she took maternity leave, she worked 546.25 hours, and earned $18,016.42. Defendant assigned non-pregnant patrol officers on light duty an average of 34.5 per week, ranging from 20 per week to 50 per week. If Plaintiff would have been assigned the same number of hours as non-pregnant patrol officers at her hourly rate of $32.98 per hour, she would have earned $34,995.27. This figure does not include the overtime print detail that was taken away from her. Plaintiff was eligible for 20 print details at 4 hours each at 1.5 times pay, totaling $3,957.84. As such, Plaintiff should have earned $41,953.11. Subtracting what Plaintiff actually earned from what she should have earned, her damages are $23,936.69 ($41,953.11 - $18,016.42). Under Title VII, back pay is an equitable remedy to be decided by the Court. As such, Plaintiff requests that this Court grant back pay following a finding of liability.

### C. Identification of Witnesses

**Plaintiff expects to call**

1. Tiffani M. Shaffer (liability and damages)
   c/o Christine T. Elzer

2.  Chief Kevin Meyer (liability)
    c/o Teresa Sirianni

3.  Stacy Goettler (liability)
    c/o Teresa Sirianni

4.  Officer Mark Shields (liability)
    Cranberry Township Police Department
    2525 Rochester Road
    Suite 500
    Cranberry Township, PA 16066

5.  Paul Shaffer (damages)
    142 Pfeifer Rd.
    Harmony, PA 16037

**Plaintiff may call**

6.  Sergeant Chuck Mascellino (liability)
    c/o Teresa Sirianni

7.  Officer Robert Capezio (liability and damages)
    Cranberry Township Police Department
    2525 Rochester Road
    Suite 500
    Cranberry Township, PA 16066

8.  Dr. Maria Udrea (liability)
    Century Medical Associates
    133 Church Hill Road
    McKees Rocks, PA 15136

D.  **Designation of Deposition Testimony**

Not applicable, unless a witness becomes unavailable, or for impeachment purposes.

E.  **Identification of Exhibits**

**Plaintiff expects to offer**

1.  Essential Duties List with Doctor's Notes (CT0001-2)

2.  Letter from Dr. Udrea dated June 8, 2018 (CT085)

3.  Fax from HR re Essential Duties List (CT0005)

4. Letter from Goettler to Shaffer dated June 22, 2018 (CT0715-716)

5. Notice of Charge of Discrimination received by Defendant (ECF No. 40-9)

6. Emails between Meyer and Shaffer re "Schedule" (CT0605-606)

7. Emails between Meyer and Shaffer re "PICS Investigation OC" (CT0601)

8. Emails between Meyer and Shaffer re "Friday 8/3" (CT0594-595)

9. Emails between Meyer and Shaffer re "8/8" (CT0590-591)

10. Emails between Meyer and Shaffer re "8/9" (CT0585-588)

11. Emails between Myer and Shaffer re "Schedule" (CT0599)

12. Letter to Shaffer dated September 6, 2018 (SHAFFER000095)

13. Excerpt from Collective Bargaining Agreement (CT 884, 891-892, 912)

14. Text messages between Shaffer and Mascellino (SHAFFER000191)

15. Emails between R. Hawk and Meyer re "VACATION DAY" (CT0796)

16. Email re Mark Shields (CT1308)

17. Shields Return to Work Letter Dated October 19, 2015 (CT1304)

18. Letter to W. Roberts dated August 7, 2015 (CT1323)

19. Letter to J. Kobistek dated February 5, 2015 (CT1313-1315)

20. Memorandum re J. Kobistek dated February 18, 2015 (SHAFFER000174)

21. Memorandum re R. Evanson dated February 21, 2014 (SHAFFER000175)

22. Shaffer's Time Sheets (CT0530-557)

23. Shields' Time Sheets (CT0994-1003)

24. Roberts' Time Sheets (CT1106-1175)

25. Kobistek's Time Sheets (CT1176-1201)

26. Evanson's Time Sheets (CT1127-1282)

27. Chart Set forth on Page 9 above (per Fed. R. Evid. 1006)

28. Defendant's Answers and Supplemental Answers to Plaintiff's First Interrogatories and Requests

29. Defendant's Answers to Plaintiff's Second Interrogatories and Requests

**Plaintiff may offer**

30. Chief Meyers' Notes (CT808-810)

31. Shaffer's Original EEOC Charge and Inquiry (SHAFFER000001-4)

32. Shaffer's Amended EEOC Charge (SHAFFER000007-8)

33. FMLA paperwork completed by Dr. Udrea (CT0649-652)

34. Shaffer's W-2s from 2018 and 2019 (SHAFFER000061-62)

35. 2018 Schedules (SHAFFER000133-139)

36. Shaffer's 2018 Paycheck History (SHAFFER000140-154)

37. Shaffer's Typed Notes dated April 11, 2018 to September 12, 2018 (SHAFFER000157-165)

38. Text Messages between Shaffer and Goettler (SHAFFER000183)

39. Email from B. Bertoncello to EEOC (SHAFFER EEOC000027)

F. **Legal Issues to be Addressed at Final Pretrial Conference**

   None anticipated.

G. **Copies Expert Disclosures**

   Not applicable.

H. **Copies of Physician Reports**

   Not applicable

Respectfully submitted,

**ELZER LAW FIRM, LLC**

<u>/s/ Christine T. Elzer</u>
Christine T. Elzer
Pa. I.D. No. 208157
Tamra Van Hausen
Pa. I.D. No. 330577

100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-8436

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2021, I served a copy of the foregoing Plaintiff's Pretrial Statement upon the following counsel via CM/ECF:

Teresa O. Sirianni
tosirianni@mdwcg.com

Morgan M. J. Randle
mmrandle@mdwcg.com

/s/ Christine T. Elzer
Christine T. Elzer
