IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANI M. SHAFFER, | ) | |
| | ) | |
| | ) | 2:19-CV-01481-CCW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRANBERRY TOWNSHIP, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are three Motions in Limine filed by Plaintiff Tiffani Shaffer.  *See* ECF Nos. 72, 74, and 80.  For the reasons set forth below, the Court will resolve Ms. Shaffer's Motions as follows:

- Plaintiff's Motion in Limine to Preclude Exhibit D64, ECF No. 72, will be GRANTED;

- Plaintiff's Motion in Limine to Exclude References to Cost to Taxpayers, ECF No. 74, will be DENIED WITHOUT PREJUDICE; and

- Plaintiff's Motion in Limine to Exclude References to Unemployment Compensation, ECF No. 80, will be GRANTED and, as such, Exhibit J28 will also be redacted accordingly.

## I.    Discussion

"[A] motion in limine is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 246 (W.D. Pa. 2012).  A trial court has discretion arising from its "inherent authority to manage the course of trials" to rule on such motions.  *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  That said, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds" to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence.  *Johnstown*

*Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC,* 2019 U.S. Dist. LEXIS 131234, at *7 (W.D. Pa. Aug. 6, 2019) (internal citation omitted).

**A.      Plaintiff's Motion in Limine to Preclude Exhibit D64, ECF No. 72, is GRANTED**

Ms. Shaffer seeks to preclude Defendant from introducing Exhibit D64. *See* ECF No. 72. That exhibit consists of a two-page, type-written document created by Ms. Goettler, Defendant's Human Resources Manager, purporting to describe a July 26, 2018, meeting between Ms. Shaffer, Ms. Goettler, and Chief Meyer. *See id.* ¶¶ 2–3. Ms. Goettler compiled D64 "partially from memory, and partially based on handwritten notes of approximately six lines." *Id.* ¶ 3. Ms. Shaffer argues that Ms. Goettler's notes in D64 constitute inadmissible hearsay under Federal Rules of Evidence 801 and 802 and for which there is no recognized exception under Rule 803, in particular Rules 803(1) (present sense impression), 803(5) (past recollection recorded) and 803(6) (records of a regularly conducted activity).[1] Defendant does not contest that D64 constitutes hearsay within the meaning of Rule 801, but, instead, disputes whether D64 falls into one of the above-listed exceptions to the rule against hearsay. *See* ECF No. 82. Furthermore, Defendant maintains that D64 should be admitted under Rule 807's residual exception. *See id.*

**1.      D64 is Not Admissible as a Present Sense Impression under Rule 803(1)**

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." "This exception has three requirements: '(1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous.'" *AAMCO*

---

[1] Rule 804—relating to hearsay exceptions applicable when the declarant is unavailable—is not applicable here. Neither party asserts that Ms. Goettler is or will be unavailable; indeed, she appears on each party's witness list. *See* ECF Nos. 61 (Plaintiff's Witness List) and 64 (Defendant's Witness List).

*Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 795 (E.D. Pa. 2008) (citing *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998)).  Although there is no bright-line rule as to how close in time to an event a statement must be made to render the statement admissible under Rule 803(1), "[t]he fundamental premise behind this hearsay exception 'is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication.'" *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (quoting *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004)).

Here, D64 fails to meet the contemporaneity requirement of Rule 803(1).  Although neither party provides a clear estimate of just how long after the July 26, 2018 meeting Ms. Goettler typed the notes contained in D64, Ms. Goettler testified that she created D64 by combining her handwritten notes with her memory of the meeting.  Such a process inevitably provided Ms. Goettler with the opportunity to "reflect on the incident and, consciously or unconsciously, fabricate [her] statements," *Neebe v. Ravin Crossbows, LLC*, 532 F. Supp. 3d 253, 258 (E.D. Pa. 2021), thereby undermining the "fundamental premise behind this hearsay exception," namely, contemporaneity.  *Green*, 556 F.3d at 156 (citing *Manfre*, 368 F.3d at 840 ("The opportunity for strategic modification undercuts the reliability that spontaneity insures.")).  Indeed, a comparison of Ms. Goettler's handwritten and typewritten notes, could lead to the conclusion that Ms. Goettler, consciously or not, re-ordered the sequence of the topics discussed during the meeting.  *Compare* ECF No. 72-1 (typewritten notes, with discussion of DUI-related matters appearing before discussion of Ms. Shaffer's EEOC complaint) *with* ECF NO. 72-3 (handwritten notes, with the first referring to the EEOC complaint and the second line referring to DUI-related matters); *see also* ECF No. 40-14 at 44:20–45:12 (deposition testimony of Ms. Goettler reading handwritten notes).  This discrepancy between the typewritten and handwritten notes suggests, at a minimum,

a level of editorializing by Ms. Goettler in creating the typewritten notes that results in D64 falling outside of the present sense impression exception.  Accordingly, the Court concludes that D64 is not admissible under Rule 803(1).

> ### 2.  D64 is Not Admissible as a Past Recollection Recorded under Rule 803(5)

Rule 803(5) provides for admission of "[a] record that:  (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;  (B) was made or adopted by the witness when the matter was fresh in the witness's memory;  and (C) accurately reflects the witness's knowledge.  If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."  As such, Ms. Shaffer contends that

> only if Ms. Goettler is on the stand at trial; is unable to recall the events of the July 26 meeting;  and her memory cannot be refreshed, can she testify by reading the contends of Exhibit D64 into evidence.  Regardless, the document cannot be entered into evidence or go back with the jury.

ECF No. 73 at 5 (citing Fed. R. Evid. 803(5)).  Defendant essentially concedes these points.  *See* ECF no. 82 at 6.  Accordingly, while Defendant may use D64 to refresh Ms. Goettler's recollection, *see* Fed. R. Evid. 612, or, if appropriate foundation is laid, may have Ms. Goettler read D64 into the record (subject to any double hearsay issues, *see* Fed. R. Evid. 805), *see AAMCO Transmissions, Inc. v. Baker,* 591 F. Supp. 2d 788, 798 n.5 (E.D. Pa. 2008) ("Rule 803(5), by its very language, contemplates the witness testifies he made the record himself, reviewed and adopted the memo at a time when it was fresh in his mind, but now has insufficient recollection to testify fully and accurately before the document can be read at trial.  Here [the witness] has not made these required admissions, nor has he addressed the multiple hearsay issues of Rule 805.") (citations omitted).  However, in no case will Rule 803(5) permit Defendant to mark D64 as an exhibit or allow it to go out with the jury.

### 3.   D64 is Not Admissible as a Record of a Regularly Conducted Activity under Rule 803(6)

"A record of an act, event, condition, opinion, or diagnosis" may be admissible under Rule 803(6) if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification;  and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).   Records made in anticipation of litigation, however, are generally not admissible under Rule 803(6).   *See, Palmer v. Hoffman*, 318 U.S. 109, 114 (1943) ("Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business.   Their primary utility is in litigating, not in railroading.");   *Ebenhoech v. Koppers Indus.*, 239 F.Supp.2d 455, 465 (D. N.J. 2002) (noting that "Courts have therefore found that the exception applies to business records which are reliable and trustworthy because the employee was motivated to be accurate because the business depends on accuracy of the record to conduct its affairs, and created the record in a habitual manner" and that "[t]he Third Circuit has cited *Palmer* for the proposition that the motivation of the report's writer is key to deciding whether the report is admissible under Rule 803(6).") (citing *United States v. Casoni*, 950 F.2d 893, 911 n.10 (3d Cir. 1991) ("Hesitation must be experienced in admitting everything which is observed and recorded in the course of a regularly conducted activity… Consequently the rule proceeds from the base that records made in the course of a regularly conducted activity will be taken as admissible but subject to authority to exclude if 'the sources of

information or other circumstance indicate lack of trustworthiness.'") (quoting Fed. R. Evid. 803(6) Advisory Committee's note)).

Here, D64 does not fall within the exception set forth in Rule 803(6) for two reasons. First, although Defendant contends that it was Ms. Goettler's "common practice to create a record of sessions/conferences with employees regarding their employment, performance, status etc.," ECF No. 82 at 4, thereby apparently satisfying requirement (C), Defendant is unable to satisfy requirement (B), that is, that the "record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling." In other words, while Ms. Goettler may have typically created records related to her meetings with Defendant's employees, there is no evidence that this meeting in particular—which involved, in significant part, discussion of Ms. Shaffer filing a charge with the EEOC, *see* ECF No. 72-1 (Exhibit D64, noting "[w]e spoke with Tiffani about the EEOC complaint we received."); ECF No. 72-3 (Ms. Goettler's hand-written notes, referencing "EEOC complaint"); and ECF No. 40-14 at 44:20–45:12 (clarifying that, on the page of hand-written notes, only the middle section relates to the July 26, 2018 meeting)—was a "regularly conducted activity" like, for example, a yearly performance evaluation.

Second, and relatedly, notwithstanding Defendant's arguments to the contrary, *see* ECF No. 82 at 4–5 (contending it is "nothing more than speculation" to suggest D64 was produced in anticipation of litigation), it appears to the Court that D64 was produced with an eye to protecting Defendant in case Ms. Shaffer filed suit. In particular, the Court notes that Ms. Shaffer filed a "Notice of Charge of Discrimination" with the EEOC on July 11, 2018, alleging discrimination by Defendant on the basis of sex. *See* ECF No. 40-9; ECF No. 39 ¶ 76. Defendant received the Notice of Charge on July 13, 2018. *See* ECF No. 39 ¶ 76. And, as made clear by both the parties' summary judgment briefing and D64 itself, one of the motivations behind holding the July 26,

2018, was for Chief Meyer and Ms. Goettler to discuss the Notice of Charge with Ms. Shaffer, "what triggered the complaint and is there something we could do to correct it." ECF No. 72-1 (Exhibit D64); ECF No. 39 ¶¶ 85–86; ECF No. 42 ¶¶ 40–42. Finally, and as noted above, the discrepancies between Ms. Goettler's handwritten and typewritten notes suggest some level of editorializing by Ms. Goettler, conscious or otherwise, such that discussion of the EEOC complaint features less prominently in the later-produced typewritten notes than the original handwritten notes, thereby raising whether "the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Accordingly, D64 is not admissible under Rule 803(6).

### 4.    D64 is Not Admissible under the Residual Exception in Rule 807

Hearsay not admissible under any other exception may nevertheless not be excluded if,

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a)(1)-(2). To avail itself of Rule 807, the proponent of a piece of evidence must also provide sufficient notice to the adverse party. Fed. R. Evid. 807(b).

"The residual hearsay exception is rarely invoked, and applied only in exceptional circumstances." *Navedo v. PrimeCare Med., Inc*., No. 1:12-cv-00888, 2014 U.S. Dist. LEXIS 51484, at *5 (M.D. Pa. Apr. 14, 2014) (citing *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 112 (3d Cir.2001)). As such, "[t]here is a heavy burden on the proponent of the statement, and invocation of the rule requires 'some degree of rigor.' *Id.* at *5–6 (quoting *Trustees of the Univ. of Pa. v. Lexington Ins. Co*., 815 F.2d 890, 906 (3d Cir. 1987)). "Thus, the statement must be trustworthy, material, probative, in the interests of justice, consistent with the purposes of the Rules of Evidence, and accompanied by proper notice." *Wezorek v. Allstate Ins*. Co., No. 06-CV-1031, 2007 U.S. Dist. LEXIS 45595, at *6 (E.D. Pa. June 22, 2007) (citing *Coyle v. Kristjan*

*Palusalu Maritime Co., Ltd.*, 83 F. Supp. 2d 535, 545 (E.D. Pa. 2000)).   In assessing trustworthiness, courts in this circuit apply a non-exclusive set of factors.  *See id.* (citation omitted).

Defendant makes no particularly compelling argument as to why or how the "exceptional circumstances" necessary for application of Rule 807's residual exception are present here, especially given that all of the participants in the July 26, 2018 meeting, including Ms. Goettler, are expected to testify at trial.  Furthermore, while touching on the probativeness of D64 and the notice requirement, Defendant makes, at best, only a cursory attempt at demonstrating trustworthiness.  As the proponent of D64, Defendant has therefore failed to satisfy its "heavy burden" under Rule 807.

In sum, because there does not appear to be any exception to the rule against hearsay applicable to D64, Plaintiff's Motion at ECF No. 72 is hereby GRANTED.

> **B.    Plaintiff's Motion in Limine to Exclude References to Cost to Taxpayers, ECF No. 74, is DENIED WITHOUT PREJUDICE**

Ms. Shaffer seeks to preclude Defendant from eliciting testimony or making any reference to "taxpayers" as either irrelevant under Rule 402 or unfairly prejudicial under Rule 403.  *See* ECF No. 75 at 1.  In support, Ms. Shaffer argues that (1) the "cost to taxpayers" is not relevant to the legitimate, non-discriminatory reason advanced by Defendant in this case, and (2) the "minimal probative value" of references to "taxpayers" is substantially outweighed by the danger of unfair prejudice and misleading the jury.  *See id.*  On the other hand, in the event the Court permits Defendant to introduce cost evidence, Ms. Shaffer seeks permission to introduce evidence that any judgment against Defendant would be paid through insurance, not the taxpayers.  *See id.* at 4–5. Defendant maintains that references to "cost to taxpayers" are relevant to Chief Meyer's explanation of his decision-making process regarding requests for light duty assignments, including Ms. Shaffer's, and that an employer may consider cost so long as it is not the sole factor

in considering a request for accommodation.  *See* ECF No. 83 at 2–3.  Defendant further maintains that exclusion of references to "taxpayers" would, in fact, be unfairly prejudicial and misleading as the jury would be presented with an inaccurate and incomplete picture of Defendant's decision-making process.  *See id.* at 4.

Under Federal Rule of Evidence 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Rule 402 provides that "[i]rrelevant evidence is not admissible."  And, even if a piece of evidence is relevant, under Rule 403 it may nevertheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Supreme Court has held that "consistent with the [Pregnancy Discrimination] Act's basic objective, [an employer's legitimate, non-discriminatory] reason normally cannot consist simply of a claim that it is more expensive or less convenient to add pregnant women to the category of those ('similar in their ability or inability to work') whom the employer accommodates."  *Young v. UPS*, 575 U.S. 206, 229 (2015);  *see also Legg v. Ulster Cty.,* 820 F.3d 67, 78 (2d Cir. 2016) ("And while the cost of adding pregnant workers to an otherwise expansive program of accommodation cannot justify their exclusion, a policy is not necessarily doomed by the fact that it was partially motivated by cost.").

Here, Chief Meyer testified that, in general, when reviewing a request for light duty,

> I look at the request, I evaluate the request, I determine if there's any open available work for -- for that particular individual, and then -- that -- that would meet the restrictions, obviously that the – the physician or the doctor provided and then see if there's an opportunity to plug them in, and we would do that.

ECF No. 40-15 at 19:11–19.  And, with respect to another officer's light-duty accommodation,

he testified that

> A: If it was just sitting at the front desk taking walk ins and phone calls, I -- I
> wouldn't be able to justify that and that wouldn't have occurred.
> Q. Okay. So when you say you wouldn't be able to justify that, justify it to whom?
> A. Well, justify it to my boss or justify it to the taxpayers at Cranberry Township,
> that I'm paying somebody the wages of a patrol officer to sit at the front desk and
> wait for somebody to show up and take a walk in call or wait for the phone to ring.

ECF No. 40-15 at 113:8–21 (testimony regarding accommodation provided to Officer Evanson).

With respect to Ms. Shaffer, however, Chief Meyer testified that,

> A: So I was constantly thinking outside the box, trying to find work to
> accommodate her restrictions. And, you know, for her to say otherwise, you know,
> it -- it -- it really -- it -- you know, it just -- it bothers me.
> Q. And it bothers you for any reason other than you already described?
> A. Well, I -- I -- I tried to do my best. You know -- you know, the shots that I take
> here are -- you know, it's – I''s somewhat difficult to take. But I get it. I'm the
> Chief. I have to make these decisions.
>     But, you know, if – if Tiffani had her way -- you know, I have two females
> that work -- that work for me. Both of them decided to get pregnant at the same
> time, and I have another office[r] off on a traffic crash that he was off duty on and
> he broke his collarbone and now he's asking me for limited duty. And then I have
> another officer at the same time is off with a -- an on duty injury.
>     So now I have four people, and according to Tiffani's accounting I have to
> give them all 40 hours of work. It just doesn't make sense and it's not fair to the
> taxpayers of Cranberry Township.
>     So I got to look big picture. She's looking small picture. I'm looking big
> picture.

*Id.* at 187:10–188:13.  As to Ms. Shaffer, Chief Meyer conceded, however, that the factual scenario

he laid out—i.e. four officers on light duty at the same time—was irrelevant because, during the

time of Ms. Shaffer sought accommodation, she was the only officer on light duty.  *See id.* at

188:14–19.

Given Chief Meyer's testimony, whether references to the "cost to taxpayers" are either

relevant or unfairly prejudicial in this case is a close question.  That is, although he testified that,

generally speaking, cost is one factor he considers when evaluating a light duty request, Chief

Meyer's explanation of his cost consideration in Ms. Shaffer's case involved an irrelevant hypothetical factual scenario.  Furthermore, there appears to be only a tangential relationship between Defendant's previously articulated justification for its decisions—i.e. that Defendant "provided [Ms. Shaffer] with all the work the she was qualified to do based on her tenure with the Department, and that fit within her doctor's restrictions, and her own comfort level," ECF No. 38 at 14—and the cost of the requested accommodations.  Thus, even if cost was a factor considered by Chief Meyer, it appears to be of only limited probative value in light of the fact that Defendant has expressly tied its decision to Ms. Shaffer's qualifications and medical restrictions—not cost.  And, as Ms. Shaffer points out, permitting Defendant to place "cost to the taxpayer" at issue could be unfairly prejudicial and misleading by "appealing to a jury's pecuniary interest as taxpayers" and "imply[ing] that taxpayers would be on the hook for any judgment against Cranberry Township."  ECF No. 75 at 3–4.

That said, however, evidence is relevant if it has *any* tendency to make a fact of consequence more or less likely.  Fed. R. Evid. 401.  Given Chief Meyer's deposition testimony, "cost to taxpayers" may have had some bearing on his decision with respect to Ms. Shaffer's requested accommodation; if so, such testimony at trial would likely be relevant.  However, the Court cannot decide until Chief Meyer testifies at trial whether this evidence is relevant, and if so, whether its probative value is or is not substantially outweighed by the danger of, e.g., unfair prejudice or misleading the jury under Rule 403.

Accordingly, Plaintiff's request to exclude evidence related to the "cost to taxpayers" is DENIED WITHOUT PREJUDICE as follows:  Defendant may seek to introduce testimony regarding the cost of accommodating light duty requests, but only to the extent Chief Meyer testifies and lays the foundation that he (1) actually considered cost as a factor in evaluating light

duty requests and (2) actually considered cost in evaluating Ms. Shaffer's request, and subject to any appropriate renewed objection from Plaintiff depending on the particular evidence Defendant seeks to introduce.

On the other hand, Ms. Shaffer's request, in the alternative, to introduce evidence that Defendant's insurance would pay any judgment in this case will also be denied without prejudice. Under Rule 411, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."  Whether or not Defendant is insured as to a judgment has no relevance with respect to the cost, if any, of accommodating light duty requests based on medical restrictions, or any other issue at play in this case.   And, while Ms. Shaffer maintains that evidence that Defendant carries insurance would be permissible under Rule 411 here as "another purpose"— specifically, that by referencing cost, Defendant will be putting its financial condition at issue, and therefore evidence of insurance should be allowed—it does not appear at this time that testimony about Chief Meyer's consideration of cost would open the door on the issue of Defendant's ability to pay a judgment.   As such, the Court hereby DENIES WITHOUT PREJUDICE Plaintiff's request for an "advance ruling" on whether Plaintiff will be permitted to introduce evidence regarding Defendant's liability insurance.   Should Defendant open the door on the issue of its ability to satisfy a judgment, Plaintiff may renew her request.

### C.   Plaintiff's Motion in Limine to Exclude References to Unemployment Compensation, ECF No. 80, is GRANTED

In her final Motion, Ms. Shaffer seeks to exclude any reference to her receipt of unemployment compensation during her pregnancy.  *See* ECF No. 81 at 1.  Ms. Shaffer argues that such evidence should be excluded as irrelevant and/or unfairly prejudicial under Rules 402 and

403 because (1) an award of backpay, if any, is an equitable remedy that will be decided by the Court, not the jury and (2) unemployment compensation is a collateral source that should not be considered when determining damages, if any. *See id.* at 2–4 (citing *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 82-83 (3d Cir. 1983) (unemployment compensation is a collateral source and so not deducted from backpay) and *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006) (backpay is an equitable remedy "awarded at the discretion of the court")).  In opposition, while conceding that "Ms. Shaffer's receipt of unemployment compensation benefits cannot be used to offset or deduct any award of back pay," Defendant nevertheless maintains that the bare fact that Ms. Shaffer received unemployment benefits should be admissible because "it is relevant and prejudicial to the Township if excluded as the jury may wrongfully assume that Ms. Shaffer received no income at all when she did not work and then use that in a punitive way in deciding liability against the Township."  ECF No. 84 at 1–2.

The parties are in agreement that (1) unemployment compensation is a collateral source that should not be considered when determining damages and (2) backpay is, in any event, an issue for the Court not the jury.  Furthermore, the jury will be instructed that punitive damages are not available in this case, and that they are not to consider lost wages in determining the amount of any award.  *See* ECF No. 81 at 2 (quoting ECF No. 77 at 8 (proposed jury instructions)).  Accordingly, Ms. Shaffer's receipt of unemployment compensation is not relevant under Rule 401, and is therefore inadmissible under Rule 402.  The Court therefore GRANTS Ms. Shaffer's Motion to exclude references to unemployment benefits, and further GRANTS her request with respect to Exhibit J28, such that the phrase "and explained that she did apply for unemployment to offset the hours she would be missing" shall be redacted.  *See* ECF No. 80-2 at 3.

## II.     Conclusion

For the reasons set forth above, Ms. Shaffer's Motions in Limine, ECF Nos. 72, 74, and 80, are

hereby resolved as follows:

- Plaintiff's Motion in Limine to Preclude Exhibit D64, ECF No. 72, is GRANTED because Ms. Stacy Goettler's type-written notes, created from memory and handwritten notes following a July 26, 2018, meeting between Ms. Shaffer, Ms. Goettler, and Chief Kevin Meyer, are hearsay under Federal Rules of Evidence 801 and 802 and no exception under Rule 803 would otherwise permit them to be offered into evidence.

- Plaintiff's Motion in Limine to Exclude References to Cost to Taxpayers, ECF No. 74, is DENIED WITHOUT PREJUDICE, because the Court cannot, at this time, determine whether and to what extent cost considerations were relevant to Defendant's actions, and, as such, is also unable to determine at present whether the probative value of such evidence is substantially outweighed by the risk of unfair prejudice or misleading the jury.

- Plaintiff's Motion in Limine to Exclude References to Unemployment Compensation, ECF No. 80, is GRANTED because such evidence is irrelevant under Rule 401, and therefore inadmissible under Rule 402, given that (1) unemployment compensation is a collateral source and (2) the jury will not determine a back pay award, if any, in this case. Accordingly, because references to unemployment compensation will be excluded, the phrase "and explained that she did apply for unemployment to offset the hours she would be missing" shall be redacted from Exhibit J28.


IT IS SO ORDERED.

DATED this 15th day of June, 2022.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record

14